JEAN E. WILLIAMS,
Acting Assistant Attorney General
SETH M. BARSKY, Section Chief
MEREDITH L. FLAX, Assistant Section Chief
COBY HOWELL, Senior Trial Attorney
MICHAEL R. EITEL, Senior Trial Attorney
DEVON L. FLANAGAN, Trial Attorney
U.S. Department of Justice
c/o U.S. Attorney's Office
1000 SW Third Avenue
Portland, Oregon 97204-2902
Tel: (503) 727-1023 | Fax: (503) 727-1117
Email: Coby.Howell@usdoj.gov

*Attorneys for Federal Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| CROW INDIAN TRIBE et al., | CV 17-89-M-DLC |
| Plaintiffs, vs. | (Consolidated with Case Nos. CV 17-117-M-DLC, CV 17-118-M-DLC, CV 17-119-M-DLC, and CV 17-123-M-DLC) |
| UNITED STATES OF AMERICA et al., Federal-Defendants. and STATE OF WYOMING, *et al.*, | **FEDERAL DEFENDANTS' COMBINED OPPOSITION TO PLAINTIFFS' MOTIONS FOR ATTORNEYS FEES AND COSTS IN (CV 17-119-M-DLC); (CV 17-118-M-DLC)** |

# TABLE OF CONTENTS

PAGE

INTRODUCTION .................................................................................. 1

BACKGROUND ................................................................................... 3

    A.   Plaintiffs' Complaints .................................................... 4

    B.   The Court's Consolidation Order ................................... 6

    C.   Dispositive Motions and Briefing ................................. 9

    D.   District Court and Ninth Circuit Decisions ................ 11

    E.   Motions for Attorneys' Fees and Costs ....................... 13

STANDARD OF REVIEW .................................................................. 15

ARGUMENT ....................................................................................... 17

   I.  PLAINTIFFS' HOURS ARE EXCESSIVE. ................................ 17

    A.   Plaintiffs' Fee Experts Failed to Evaluate Contemporaneous Billing Records in This Case and Therefore the Testimony is Unreliable and Should be Excluded. ......................................... 27

    B.   Plaintiffs' Hours are Excessive Because There Was Needless Duplication ................................................................. 32

i

C.     Specific Objections to Guardians' Excessive Hours. .................. 40

D.     Specific Objections to Northern Cheyenne's Excessive

Hours. ....................................................................... 44

II.   PLAINTIFFS SHOULD NOT RECOVER FOR TIME SPENT ON

THEIR FEE AND COST MOTIONS. ............................................. 46

III.   PLAINTIFFS SHOULD NOT RECOVER THEIR COSTS ......... 48

CONCLUSION ........................................................................ 48

# TABLE OF AUTHORITIES

**CASES**                                                                   **PAGE**

*Abarca v. Franklin Cty. Water Dist.*,
   761 F. Supp. 2d 1007 (E.D. Cal. 2011)................................................. 30

*Aland v. U.S. Department of Interior*,
   CV 18-16-M-DLC ...................................................................................... 4

*All. for the Wild Rockies v. Savage*
   2019 WL 3293425 (D. Mont. July 22, 2019) ....................................... 26

*Alliance for the Wild Rockies v. Zinke*,
   CV 17-123-M-DLC ............................................................................. 4, 15

*Asia Pac. Agric. & Forestry Co. v. Sester Farms*,
   2013 WL 6157263 (D. Or. 2013).......................................................... 45

*Ass'n of California Water Agencies v. Evans*,
   386 F.3d 879 (9th Cir. 2004) ........................................................ 34, 35

*Azua ex rel. Dupree v. Nat'l Steel & Shipbuilding Co.*,
   534 F. App'x 618 (9th Cir. 2013) ......................................................... 43

*Blum v. Stenson*,
   465 U.S. 886 (1984) .............................................................................. 27

*Center for Biological Diversity v. Zinke*,
   2017 WL 1245638 ................................................................................. 38

*Copeland v. Marshall*,
   641 F.2d 880 (D.C. Cir. 1980)....................................................... 22, 41

*Costa v. Commissioner of Social Sec. Admin.*,
   690 F.3d 1132 (9th Cir. 2012) ............................................................. 16

*Crow Indian Tribe v. United States*,
   Case No. 18-36030 (9th Cir. July 8, 2020)........................................... 11

*Crow Indian Tribe v. United States,*
   CV 17-89-M-DLC ............................................................... 3, 15

*Crow Indian Tribe v. United States,*
   965 F.3d 662 (9th Cir. 2020) ............................. 12, 13, 15, 48

*Cruz v. Starbucks Corp.,*
   2013 WL 2447862 (N.D. Cal. June 5, 2013) ........................ 45

*Defs. of Wildlife v. Hall,*
   No. CV-08-56-M-DWM (D. Mont. Feb. 17, 2009) ................ 23

*Delson v. CYCT Mgmt. Grp.,*
   2013 WL 1819265 (N.D. Cal. Apr. 30, 2013) ....................... 26

*Entm't Research Group v. Genesis Creative Grp.,*
   122 F.3d 1211 (9th Cir. 1997) ............................................ 43

*Envtl. Prot. Info. Ctr., Inc. v. Pac. Lumber Co.,*
   229 F. Supp. 2d 993 (N.D. Cal. 2002) ................................ 27

*Finkelstein v. Bergna,*
   804 F. Supp. 1235 (N.D. Cal. 1992) ................................... 42

*Fox v. Vice,*
   563 U.S. 826 (2011) ............................................................ 17

*Frank Music Corp. v. Metro-Goldwyn-Mayer,*
   886 F.2d 1545 (9th Cir. 1989) ............................................ 24

*Gates v. Rowland,*
   39 F.3d 1439 (9th Cir. 1994) .............................................. 37

*Gates v. Deukmejian,*
   987 F.2d 1392 (9th Cir. 1992) ............................................ 25

*General Elec. v. Joiner,*
   522 U.S. 136 (1997) ............................................................ 32

*Gonzalez v. City of Maywood,*
   729 F.3d 1196 (9th Cir. 2013) ................................. 16, 30, 31

*Grendel's Den, Inc. v. Larkin,*
   749 F.2d 945 (1st Cir. 1984) .............................................. 44

*Grove v. Mead Sch. Dist. No.,* 354
   753 F.2d 1528 (9th Cir. 1985) ............................................ 33

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983) ................................................................ 39, 40, 43

*Hernandez v. Grullense,*
  2014 WL 1724356 (N.D. Cal. Apr. 30, 2014) ........................................ 26

*Hogan v. Robinson,*
  2007 WL 4557097 (E.D. Cal. Dec. 21, 2007) ........................................ 42

*HTV Indus. v. Agarwal,*
  317 F. Supp. 3d 707 (S.D.N.Y. 2018) ................................................ 41

*Humane Society v. U.S. Fish and Wildlife Services,*
  CV 17-117-M-DLC .................................................................. 3, 15

*Humane Soc'y of the U.S. v. Zinke,*
  865 F.3d 585 (D.C. Cir. 2017) ....................................................... 9, 43

*Inst. for Wildlife Prot. v. U.S. Fish & Wildlife Serv.,*
  2008 WL 4866063 (D. Or. Nov. 5, 2008) ........................................ 25, 47

*Jones v. Espy,*
  10 F.3d 690 (9th Cir. 1993) ......................................................... 42

*Kinney v. Int'l Bhd. of Elec. Workers,*
  939 F.2d 690 (9th Cir. 1991) ........................................................ 46

*Kumho Tire v. Carmichael,*
  526 U.S. 137 (1999) ................................................................. 30

*Moreno v. City of Sacramento,*
  534 F.3d 1106 (9th Cir. 2008) ....................................................... 23

*N. Cheyenne Tribe v. Zinke,*
  CV 17-119-M-DLC; .................................................................. 3

*Native Ecosystems Council v. Krueger,*
  2019 WL 1489839 (D. Mont. Apr. 4, 2019) ..................................... 26, 47

*Nat'l Ass'n of Concerned Veterans v. Sec'y of,*
  *Def.,* 675 F.2d 1319 (D.C. Cir. 1982) ............................................... 31

*Nat'l Rifle Ass'n v. Village of Oak Park,*
  871 F.Supp.2d 781 (N.D. Ill. 2012) ................................................. 39

*Rimini St. v. Oracle USA,*
  139 S. Ct. 873 (2019) ............................................................... 48

*Robins v. Matson Terminals,*
    283 F. App'x 535 (9th Cir. 2008) ...................................................43, 44

*Role Models Am. v. Brownlee,*
    353 F.3d 962 (D.C. Cir. 2004)................................................................21

*Sorenson v. Mink,*
    239 F.3d 1140 (9th Cir. 2001) .......................................................16, 39

*Stonebrae, L.P. v. Toll Bros.,*
    2011 WL 1334444 (N.D. Cal. Apr. 7, 2011) ........................................39

*Thompson v. Gomez,*
    45 F.3d 1365 (9th Cir.1995) .................................................................47

*Union Cent. Life Ins. Co. v. Berger,*
    2013 WL 6571079 (S.D.N.Y. Dec. 13, 2013) ......................................44

*United States v. Milner,*
    583 F.3d 1174 (9th Cir. 2009) ..............................................................16

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
    896 F.2d 403 (9th Cir.1990) .................................................................30

*Watkins v. Fordice,*
    7 F.3d 453 (5th Cir. 1993) ....................................................................16

*Welch v. Metro. Life Ins.,*
    480 F.3d 942 (9th Cir. 2007) ...............................................................45

*Wild Equity Inst. v. City & Cnty of San Francisco,*
    2013 WL 3338499 (N.D. Cal. 2013) ....................................................43

*Wild Rockies v. United States Dep't of Agric.,*
    2016 WL 4766234 (D. Mont. Sept. 13, 2016)......................................37

*WildEarth Guardians v. Mark,*
    741 F. App'x 404 (9th Cir. 2018).........................................................37

*WildEarth Guardians v. United States Fish & Wildlife Serv.,*
    342 F. Supp. 3d 1047 (D. Mont. 2018) ................................................32

*WildEarth Guardians v. Zinke,*
    CV 17-118-M-DLC ..................................................................................4

## STATUTES

16 U.S.C. § 1540(g)(4)......................................................15

28 U.S.C. § 2412(d)(1)(B)................................................15

28 U.S.C. § 1920...........................................................48

## RULES

Fed. R. Civ. P. 1 ...........................................................33

Fed. R. Civ. P. 42(a).......................................................7

## FEDERAL REGULATIONS

82 Fed. Reg. 30,502 (June 30, 2017) ...............................3

The United States of America; Scott de la Vega, Acting Secretary, U.S. Department of the Interior; the U.S. Department of the Interior; Martha Williams, Senior Advisor to the Secretary, Exercising the Delegated Authority of the Director, U.S. Fish and Wildlife Service; the U.S. Fish and Wildlife Service ("FWS"); and Hilary Cooley, Grizzly Bear Recovery Coordinator, *et al.,* (collectively "Federal Defendants") oppose the Northern Cheyenne, Center for Biological Diversity, Sierra Club, National Parks Conservation Association ("Northern Cheyenne"), and WildEarth Guardians ("Guardians") (collectively "Plaintiffs[1]") motions for attorneys' fees and costs in accordance with the Court's February 5, 2021 Order.  ECF_330, 350.

## INTRODUCTION

Federal Defendants do not dispute that these Plaintiffs are entitled to attorneys' fees in this litigation.  However, the amount they seek is excessive when compared to the billing records for the other

---

[1] Unless otherwise specified, this brief refers to Northern Cheyenne and Guardians as "Plaintiffs."  The other plaintiff-groups in these consolidated cases, Crow Indian Tribe ("Crow"), Alliance for the Wild Rockies ("Alliance"), and Humane Society, are referred to as ("other plaintiff-groups"), or when needed, identified specifically by their organizational names.

plaintiff-groups' attorneys.  This Court has declarations before it from competent attorneys from the other plaintiff-groups detailing reasonable billable practices for this particular controversy.  Those attorneys filed motions and declarations with this Court seeking between **$147,804.66 and $221,800** for all of their work on this case.  Federal Defendants did not dispute their billing records and settled with those plaintiff-groups.  In contrast, Plaintiffs' attorneys seek substantially more: **$515,740** and **$356.034.50** respectively.  Despite the striking disparity in requests for comparable work, Plaintiffs fail to present the Court with any explanation or evidence that explains why it is reasonable to recover roughly triple or double what other attorneys in this case swore in their declarations to be fair and reasonable.

This is not a mere oversight.  Despite actual knowledge of Federal Defendants' fundamental disagreement with the disparities in the number of billable hours, Plaintiffs' proffered experts failed to even examine the contemporaneous billing record of the other attorneys who *actually participated in this case.*  Ignoring highly relevant data is not a reliable methodology for arriving at a fee valuation opinion.  Nor is there any explanation as to why Plaintiffs' attorneys billed roughly

triple the number of hours, or in one case used nine different attorneys, to achieve the same task and same result as the other plaintiff-groups. To be sure, Federal Defendants found Plaintiffs' counsel professional and they are good attorneys, but a reasonable client would not pay thrice for the same task and same result. The United States taxpayer is no less deserving.

Plaintiffs failed to demonstrate their billable hours are reasonable, and this Court has the discretion to reduce their awards. To bring this in line with the other cases in this litigation, the Court should limit Plaintiffs' recovery to no more than **$175,000** in each case.

## BACKGROUND

These consolidated cases involve challenges to the FWS's final rule removing the Greater Yellowstone Ecosystem ("GYE") distinct population segment of the grizzly bear from the Endangered Species Act's ("ESA") list of threatened species. 82 Fed. Reg. 30,502 (June 30, 2017) ("Final Rule"). Six lawsuits were filed challenging the Final Rule. *Crow Indian Tribe v. United States*, CV 17-89-M-DLC; *Humane Society v. U.S. Fish and Wildlife Services*, CV 17-117-M-DLC; *N. Cheyenne Tribe v. Zinke*, CV 17-119-M-DLC; *Alliance for the Wild Rockies v.*

*Zinke*, CV 17-123-M-DLC; *WildEarth Guardians v. Zinke*, CV 17-118-M-DLC; *Aland v. U.S. Department of Interior*, CV 18-16-M-DLC.  As detailed below, these six lawsuits raised nearly identical claims and the briefing presented very similar arguments in this Court and the Ninth Circuit.

### A.    Plaintiffs' Complaints

On June 30, 2017, the Crow Indian Tribe, *et al.*, filed a complaint challenging the Final Rule in the District of Montana.  ECF_1.  The complaint alleged violations of the Administrative Procedure Act ("APA"), among other claims.  Roughly two months later, five other complaints were filed in the District of Montana.  *See e.g.* Alliance, 17-cv-23, ECF_1; Crow Indian Tribe (amended complaint), 17-cv-89, ECF_22; Humane Society, 17-cv-117, ECF_1; Northern Cheyenne, 17-cv-119, ECF_1; Guardians, 17-cv-118, ECF_1; Aland, 18-cv-16, ECF_1.

All six complaints raise nearly identical claims contesting the Final Rule.  For example, all six complaints allege that FWS failed to properly consider the so-called "lower-48 remnant."  *See e.g.* Crow (amended complaint), 17-cv-89, ECF_22 ¶¶ 167-174; Humane Society, 17-cv-117, ECF_1 ¶¶93-94; Northern Cheyenne, 17-cv-119, ECF_1

¶¶79-81; Guardians, 17-cv-118, ECF_1 ¶¶83-93; Alliance, 17-cv-123, ECF_1 ¶¶ 43-58; Aland, 18-cv-16, ECF_1 ¶¶139-143.  All six complaints also allege that Federal Defendants failed to base the Final Rule on the best available science.  *See e.g.* Crow ¶¶ 183-191; Humane Society ¶¶ 98-106; Northern Cheyenne ¶¶ 72-73; Guardians ¶¶ 111-115; Alliance ¶¶ 59-63; Aland ¶¶ 125-134.  Additionally, all six complaints allege that Federal Defendants improperly considered various factors as a basis for delisting.  *See e.g.* Crow ¶¶ 175-182; Humane Society ¶¶107-112; Guardians ¶¶ 116-125; Northern Cheyenne ¶¶ 74-76; Alliance ¶¶ 64-72; Aland ¶¶ 144-187.

There was also significant overlap in claims alleging that Federal Defendants violated the ESA by simultaneously designating and delisting the GYE grizzly bear DPS.  *See e.g.* Crow ¶¶ 154-159; Humane Society ¶¶ 88-97; Guardians ¶¶ 99-104; Alliance ¶¶ 43-58; Aland ¶¶ 135-143.  And there was further overlap in claims that Federal Defendants violated the APA by failing to complete the Conservation Strategy rulemaking process before delisting the DPS.  *See e.g.* Crow ¶¶ 132-137; Humane Society ¶¶ 113-117; Northern Cheyenne ¶¶ 82-85; Alliance ¶¶ 73-78.  Finally, all the complaints requested the same relief,

including a declaration that the Final Rule violates the ESA and APA, and a Court order vacating the Final Rule. Crow p. 44 ¶¶ 2-3; Humane Society ¶¶ 118-119; Guardians p. 46 ¶¶ A-B; Northern Cheyenne p. 41 ¶¶ 1-3; Alliance p. 23 ¶¶ 1-2; Aland p. 75 ¶¶ 1-2.

## B. The Court's Consolidation Order.

On November 13, 2017, the Court, *sua sponte*, issued a show-cause order asking why these cases should not be consolidated. ECF_34. The Court stated:

> First, all cases allege violations of the ESA and Administrative Procedure Act. Second, all causes of action arise from the same factual situation; namely, the delisting of the GYE grizzly bear from the endangered species list. In addition, all cases identify the United States Department of the Interior as a defendant. Furthermore, all cases seek similar relief from this Court; specifically, that the United States Fish and Wildlife Service's 2017 Final Rule regarding the GYE grizzly bear be vacated. This case is therefore particularly appropriate for consolidation.

ECF_34 at 2-3.[2] The Court then asked for the parties' position on consolidation and noted that the Court has "an interest in not receiving the same briefs on the same subject." *Id*. at 3.

---

[2] Federal Defendants have used the page number in the upper right corner generated by the Court's ECF system.

In response, none of the parties opposed consolidation, but some requested that they retain their separate identities and briefing. ECF_40 at 2. Federal Defendants also noted that there was substantial similarity in the claims and issues, and in response to the plaintiff-groups, requested "that the parties and the Court should revisit briefing procedures as well as word limitations once Plaintiffs and Defendant-Intervenors have had a chance to review the Administrative Record." *Id.*

The Court subsequently issued an order consolidating the cases pursuant to Fed. R. Civ. P. 42(a).[3] ECF_40 at 3-6. It also resolved the parties' differences by stating that "[t]he cases will retain their separate characters and the Court will issue a separate judgment in each case," ECF_40 at 3, and that "the Court will set a status conference to set a briefing schedule, set word limitations, and discuss the issues presented and potential joint briefing on similar issues." ECF_40 at 5.

---

[3] Rule 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders *to avoid unnecessary cost* or delay." Fed. R. Civ. P. 42(a) (emphasis added).

Following the consolidation order, the Humane Society and Northern Cheyenne filed (what Federal Defendants considered to be) premature motions for summary judgment. ECF_75, 89. Instead of filing piecemeal responses to these plaintiffs, Federal Defendants moved to stay briefing on those motions. ECF_78, 92. To resolve the dispute, the Court stayed all further briefing and stated that "it is the Court's intent for briefing in this case to be done in a consolidated manner." ECF_98 at 2.

Consistent with this instruction, the Court issued a scheduling order that instructed the parties to streamline proceedings and minimize duplication. ECF_178. After establishing a dispositive motions briefing schedule,[4] the Court instructed the parties "to not make duplicative arguments" and ordered that the parties shall confer, discuss the issues presented in their respective briefs, and *consolidate briefing on the same subject.*" ECF_178 at 4 (emphasis added).

---

[4] The Court limited Federal Defendants' consolidated, opening brief to just 13,000 words and consolidated reply to 6,500 words to respond to each the plaintiff-groups' briefs. ECF_178 at 3. The Court subsequently granted Federal Defendants' motion to increase the word count for our consolidated, opening brief. ECF_198.

Throughout all the scheduling orders, the Court emphasized avoiding duplication and required consolidated briefing. *Id.* Thereafter, the parties proceeded to file their summary judgment briefs and replies.

## C. Dispositive Motions and Briefing

Each plaintiff-group filed a motion for summary judgment and supporting briefing. ECF_188, 189 (Crow); ECF_190 (Northern Cheyenne); ECF_185, 186 (Guardians); ECF_193, 194 (Humane Soc'y); ECF_191, 192 (Alliance); ECF_182, 183 (Aland). Although there appears to have been some coordination among the plaintiff-groups, the vast majority of briefing from the plaintiff-groups was very similar.

Most plaintiff-groups made the argument that FWS did not properly consider the so-called "remnant" population outside the distinct population segment boundaries as the D.C. Circuit discussed in *Humane Soc'y of the U.S. v. Zinke*, 865 F.3d 585 (D.C. Cir. 2017). Considerable ink was spilt on this issue. For example, the Northern Cheyenne argued this point extensively. ECF_190 at 18-25. But so did Guardians and Alliance. ECF_186 at 23-29; ECF_192 at 11-23. Similarly, most of the plaintiff-groups argued that FWS' reliance on the Conservation Strategy was arbitrary for one reason or another. Here

9

again, the Northern Cheyenne tackled this topic, but so did the Humane Society and Alliance. ECF_194 at 12-14; ECF_190 at 14; ECF_192 at 23-25. Moreover, the Northern Cheyenne and Guardians argued that FWS's analysis of future threats to the population was inadequate, essentially duplicating the same argument. ECF_190 at 14-18; ECF_186 at 34-39. And the Northern Cheyenne and Mr. Aland both argued that FWS did not adequately address public comments during its rulemaking. ECF_190 at 30-34; ECF_183 at 12.

Admittedly, each plaintiff-group put their own variation or spin on these arguments and did not overtly mimic one another, but the arguments were very similar in nature. So much so, Federal Defendants were able to consolidate their counterarguments instead of addressing each individual plaintiff-group when they filed their combined opposition to the motions for summary judgment. For example, Federal Defendants addressed *Humane Society* in one consolidated argument without calling out the minor variations among the plaintiff-group characterizations. ECF_203 at 18-48. The other arguments were addressed in a similar consolidated fashion. ECF_203 at 48-60. In fact, Federal Defendants rarely highlighted one particular

plaintiff-group's argument throughout their entire brief due to the substantial duplication by the plaintiff-groups. *Id.* Avoiding duplication was certainly possible and Federal Defendants adhered to the Court's consolidation order.

Ninth Circuit briefing was not much different. All of the plaintiff-groups filed appellate briefs. *See e.g.* in *Crowe Indian Tribe v. United States,* Case No. 18-36030 (9th Cir. July 8, 2020), ECF_91 (Guardians), ECF_92 (Northern Cheyenne) , ECF_93 (Alliance), ECF_94 (Humane Soc'y), ECF_96 (Crow Indian Tribe, ECF_96), ECF_101 (Aland). A substantial portion of the briefing concerned whether the Ninth Circuit had jurisdiction over the appeals. *See e.g.,* in Case No. 18-36030, ECF_91 at 36-39 (Guardians); ECF_96 at 11-19 (Crow); ECF_93 at 17-41 (Alliance). The remainder of arguments largely focused on whether FWS had an obligation to conduct an ESA Section 4(a) review and the scope of *Humane Society*. *See e.g.*, in Case No. 18-36030, ECF_ 91 at 74-94 (Guardians); ECF_92 at 29-58 (Northern Cheyenne); ECF_93 at 13-17 (Alliance). While there was some coordination, there was again substantial duplication.

## D.  District Court and Ninth Circuit Decisions

This Court did not address most of Plaintiffs' arguments in its summary judgment opinion. ECF_266. And, like Federal Defendants' consolidated briefing, the Court did not attribute certain arguments to individual plaintiff-groups. Nonetheless, it did agree with the plaintiff-groups on three primary points. First, the Court held that the Final Rule and the regulatory review, taken together, failed to adequately consider the impact of delisting the grizzly distinct population segment on the other grizzly bear populations in the lower 48 states. ECF_266 at 13. Second, the Court held that FWS's conclusion that the Yellowstone grizzly is not threatened by inadequate regulatory mechanisms was arbitrary and capricious because FWS did not ensure that mortality limits would be recalibrated if a new method of estimating population size were to be adopted. ECF_266 at 31. Finally, the Court held that FWS's conclusion that the Yellowstone grizzly population is not threatened by genetic isolation was arbitrary, because the rule did not fix a date certain at which translocation of grizzlies would occur. ECF_266 at 39.

On July 8, 2020, a Ninth Circuit panel affirmed in part and remanded in part. *Crow Indian Tribe v. United States*, 965 F.3d 662,

670 (9th Cir. 2020) ("we affirm the district court's remand order, with a clarification of what we hold to be the relatively narrow scope of the consideration that must be given on remand to the effect of the delisting on the remaining, still listed, grizzly population in the coterminous 48 states.").

After rejecting plaintiffs' challenges to appellate jurisdiction, 965 F.3d at 675, the panel held that, although FWS must consider the impact of delisting a distinct population segment on the rest of the listed species, this Court went too far in holding that the Service must conduct a "comprehensive review" of the entire listed species. *Crow Indian Tribe*, 965 F.3d at 678. However, the Ninth Circuit affirmed this Court's adverse holdings on genetics and the recalibration issues. *Id.* at 678, 680. The Final Rule remained vacated.

## E.    Motions for Attorneys' Fees and Costs

Five of the plaintiff-groups filed petitions for fees and costs with the Ninth Circuit. The Ninth Circuit remanded to this Court for

resolution.[5]  ECF_308.  When the five plaintiff-groups re-filed their motions for fees and costs with this Court, they sought the following amounts:

- ■ *Crow Indian Tribe* (CV 17-89-DLC), ECF_323: $147,804.66

- ■ *Alliance* (CV 17-123-DLC), ECF_309: $181,315

- ■ *Human Society* (CV 17-117-DLC), ECF_317: $221,800

- ■ *Northern Cheyenne* (CV 17-119-DLC), ECF_313: $359,963.13

- ■ *Guardians* (CV 17-118-DLC), ECF_310, 311: $497,718

Collectively, the five plaintiff-groups in this consolidated case sought roughly $1.4 million in attorneys' fees and costs for the challenge to the Final Rule.

Upon a joint motion, this Court stayed briefing on the motions for fees and costs to allow the parties to discuss settlement.  Most of the settlement discussions were productive.  After reviewing all of the billing records and time entries, the United States and Crow Indian

---

[5] The sixth plaintiff, Mr. Aland, initially sought costs in this Court but subsequently waived that request.  ECF_339 (order dismissing motion for costs).

Tribe, Alliance, and Humane Society were able to settle their motions for fees and costs in the following amounts:

- *Crow Indian Tribe*, CV 17-89-M-DLC, ECF_336: **$132,804**

- *Humane Society*, CV 17-117-M-DLC, ECF_335: **$175,000**

- *Alliance*, CV 17-123-M-DLC, ECF_334: **$175,000**.

Those settlements have been or are in the process of being effectuated. ECF_353, 354. Federal Defendants were not able to reach agreements with the Northern Cheyenne and Guardians and as a result the Court set this briefing schedule. ECF_330.

## STANDARD OF REVIEW

Plaintiffs seek fees pursuant to the ESA citizen-suit provision, 16 U.S.C. § 1540(g)(4).[6] That provision states in relevant part: "The court, in issuing any final order in any suit brought pursuant to paragraph (1) of this subsection, *may award* costs of litigation (including *reasonable* attorney and expert witness fees) to any party, whenever the court determines such award is *appropriate*." *Id.* (emphasis added).

---

[6] Plaintiffs also seek fees and costs under the Equal Access to Justice Act. 28 U.S.C. § 2412(d)(1)(B). Under these factual circumstances, Federal Defendants do not dispute that the ESA is the operative statute.

A fee claimant is entitled to receive fees only for those hours which were reasonably billed and adequately documented. Under well-established law, any fee request must be consistent with the exercise of "billing judgment" to "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary" as a lawyer in private practice in the relevant market would do. *Costa v. Commissioner of Social Sec. Admin.,* 690 F.3d 1132, 1135 (9th Cir. 2012). Thus, district courts properly exclude hours that "reflect duplicative efforts and excessive staffing." *See Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001); *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The party seeking fees bears the burden of demonstrating entitlement to such fees, including that "the requested fees and costs are reasonable." *United States v. Milner*, 583 F.3d 1174, 1196 (9th Cir. 2009).

Courts may exclude hours in one of two ways. First, courts may exclude unreasonable hours after "conduct[ing] an hour-by-hour analysis of the fee request[.]'" *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) (internal quotation marks omitted). Second, courts "faced with a massive fee application" may "make across-the-board percentage cuts either in the number of hours claimed or in the

final lodestar figure as a practical means of excluding non-compensable hours from a fee application." *Id.* (internal quotation marks and brackets omitted); *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time").

## ARGUMENT

Guardians and Northern Cheyenne's billable hours are excessive when compared to the contemporaneous billing records of the attorneys for the other plaintiff-groups. In addition, the manner in which they litigated this case was unnecessarily duplicative and inconsistent with the Court's consolidation order. Both factors warrant substantial decreases in any fee award.

## I.    PLAINTIFFS' HOURS ARE EXCESSIVE.

Federal Defendants have carefully reviewed *all of the billing records* in the five cases and calculated how much time it took each plaintiff-group to perform each significant task throughout this

litigation.  *See* Fed. Defs.' Ex. 1.  Based on that review, Plaintiffs' hours are significantly higher on almost every task, as compared to other attorneys with roughly the same level of experience and that bill roughly at the same hourly rate.  The table below lists out the number of hours each plaintiff-group spent on significant tasks throughout the litigation.[7]

| Task | Northern Cheyenne | WildEarth Guardians | Crow Tribe | Humane Society | Alliance |
|---|---|---|---|---|---|
| Background Research, NOI & Complaint | 194.5 hrs. | 214.2 hrs. | 308.4 hrs. | 106.2 hrs. | 107.12  hrs. |
| Case Management | 8.5 hrs. | 26.4 hrs. | 18.7 hrs. | 9.7 hrs. | 8.7 hrs. |
| Response to Federal Defendants' Motion to Stay | 138.8 hrs. | 81.14 hrs. | 25.5 hrs. | 94.5 hrs. | 32.05 hrs. |
| Summary Judgment & Related Filings | 546.1 hrs. | 593.17 hrs. | 33.7 hrs. | 293.1 hrs. | 302.45 hrs. |

[7] Federal Defendants are attaching Exhibit 1, which explains and demonstrates how we arrived at the number of hours for each task.  *See* Fed. Defs.' Ex. 1.  While these estimates are subject to some subjective judgment as to the category in which certain tasks would be classified, the overall point remains the same – on average Guardians and Northern Cheyenne spent considerably more hours on almost every significant task.

| | | | | | |
|---|---|---|---|---|---|
| Administrative Record Review & Disputes | 97.9 hrs. | 268.61 hrs. | 13.9 hrs. | 155.9 hrs. | 97.59 hrs. |
| Plaintiffs' TRO/PI Motion | 41 hrs. | 40.02 hrs. | 27.2 hrs. | 30.3 hrs. | 4 hrs. |
| Fees | 1.8 hrs. | 72.4 hrs. | 1 hr. | 1.6 hrs. | 11.2 hrs. |
| Appeal | 194.1 hrs. | 291.2 hrs. | 108.9 hrs. | 114.6 hrs. | 82 hrs. |
| Consolidation, Conferencing & Strategy | 36.5 hrs. | 29.33 hrs. | 53.4 hrs. | 17.2 hrs. | 16.3 hrs. |
| Total | 1,259.2 hrs. | 1,616.47 hrs.[8] | 590.7 hrs.[9] | 823.1 hrs. | 661.41 hrs. |

In almost every category, Plaintiffs' attorneys spent more hours on their tasks, sometimes significantly more, than their colleagues. For example, Guardians spent 214.2 hours performing background research and drafting its complaint, whereas Humane Society and Alliance were at roughly half that at 106.2 and 107.12 hours respectively. Fed. Defs.' Ex. 1. Guardians spent approximately double the amount of time on case management (26.4 hours), as every other plaintiff-group. *Id.* With

---

[8] Our addition of Guardians' time entries amounts to 1,616.47 hours, which we note is 10.77 hours higher than the total reflected in Guardians' billing records.

[9] Our addition of Crow's time entries amounts to 590.7 hours, which we note is 4 hours less than the total reflected in Crow's billing records.

respect to reviewing the administrative record, Guardians again spent over double the number of hours (268.61) as any other plaintiff-group. *Id.* Similarly, Northern Cheyenne spent 138.8 hours responding to a motion to stay (totaling over *three weeks* to prepare a procedural response brief); whereas no other plaintiff-group was even close to that amount (next closest: 94.5 hours). *Id.*

While Plaintiffs were on average spending more time on each task than any other plaintiff-group, there are two areas where the disparities are particularly striking. First, both Guardians and Northern Cheyenne spent 593.17 and 546.1 hours respectively on their summary judgment briefs and related filings. *Id.* The next closest plaintiff-group was Alliance at 302.05 hours, and the others were even less. *Id.*

Federal Defendants re-reviewed the summary judgment briefing, and there is not a material difference among the plaintiff-groups' briefs (with the exception of Crow, which strictly adhered to the consolidation order). In fact, most of Plaintiffs' briefing raised issues the Court did not even address. ECF_190 at 9-18 (Northern Cheyenne primarily arguing the shift away from whitebark pine to an alleged meat-based

diet would increase mortality); ECF_186 at 21-30 (Guardians primarily arguing that it was impermissible to identify and delist a distinct population segment at the same time); ECF_186 at 30-32 (FWS must consult under Section 7 for a Section 4 delisting rule).  Regardless of their lack of success, Guardians and Northern Cheyenne claim a total of 534 *extra hours* between them just on summary judgment briefing as compared to the next closest plaintiff-group, and they entirely fail to explain the discrepancy.  By any metric, that is not reasonable.

Second, the amount of time Plaintiffs spent on appellate briefing was substantially more than the other plaintiff-groups that filed similar-length briefs.  Guardians spent an extraordinary 261.2 hours on appeal.  Fed. Defs.' Ex. 1.  The next closest was Northern Cheyenne at 194.1 hours.  *Id.*  No other plaintiff-group came even close to these totals.  Here again, after reviewing the appellate briefs, Plaintiffs' briefing was not substantially different in length and content from Alliance and Humane Society's briefing.  *See supra* 5-7.  And, like the district court briefing, Guardians and Northern Cheyenne were largely unsuccessful, or the Ninth Circuit panel did not address, their arguments.  *Role Models Am. v. Brownlee*, 353 F.3d 962, 975 (D.C. Cir.

2004) (noting that courts "have a special responsibility to ensure that taxpayers are required to reimburse prevailing parties for only those fees and expenses actually needed to achieve the favorable result"). Plaintiffs' hours are excessive when compared to the contemporaneous billing records of the other attorneys in this case.

Plaintiffs will no doubt argue that they performed different tasks than the attorneys for other plaintiff-groups, although there is nothing in their fee briefing or declarations that explains that distinction. But even if true, that would only explain a minor difference in the number of hours; not a multiplier of three or even two. As the totals reflect, on almost every task, the fee claims for Guardians and Northern Cheyenne seek reimbursement for significantly more attorney time than their fellow practitioners. *See* Fed. Def. Ex. 1 (Guardians with a total of **1,616.47** hours); (Northern Cheyenne with a total of **1,259.2** hrs.); (the next closest is Humane Society at **823.1** hrs.). Whether viewed individually or globally, Plaintiffs hours are excessive. And this Court cannot simply dismiss the disparities. *Copeland v. Marshall*, 641 F.2d 880, 888 (D.C. Cir. 1980) (*en banc*) (noting that a "[c]ourt must

scrutinize the [fees] claim with particular care" when sought from the government).

It is true, as Guardians points out in their fee brief, that Judge Molloy found 1,183 hours reasonable in wolf litigation. ECF_342 at 24 (citing *Defs. of Wildlife v. Hall*, No. CV-08-56-M-DWM (D. Mont. Feb. 17, 2009) (ECF_125 at 5)). But this argument misses three critical distinctions. First, even though Guardians seek roughly 500 more hours than the wolf-litigants, Guardians claims that over 1,500 hours "[were] needed in order to prevail." *Id.* at 23. That is simply not true as demonstrated by the other three plaintiff-groups. While the Ninth Circuit has indicated that courts should defer to the winning lawyer's judgment, this presumption must be modified when most of the winning lawyers needed less than half the hours to prevail. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). That is, the presumption has already been definitively rebutted by the other prevailing attorneys in this case.

Second, there were not six cases in the wolf litigation, and there was not a consolidation order. There are efficiencies gained when there are multiple cases; indeed, this Court ordered it when it consolidated

the cases. Yet, Guardians, and to a lesser extent Northern Cheyenne, were not judicious with their time and should not be rewarded for their inefficiencies. *Frank Music Corp. v. Metro-Goldwyn-Mayer*, 886 F.2d 1545, 1557 (9th Cir. 1989) (Plaintiffs must prove that the attorney hours billed were "reasonably necessary" to the successful prosecution of their claims). Here, these hours cannot be deemed "reasonably necessary" in light of the other plaintiff-groups' success.

Third, such a comparison would ignore the other billing records in this case, which is a far more relevant comparison than an entirely different case before a different judge. Plaintiffs' comparison to another case, while completely ignoring the billing records in this case, is puzzling at best, especially when they knew this was Federal Defendants' fundamental objection. Why would this Court look to another case, with another rule, and another judge, when it can simply look at the billing records of attorneys in this case, with this rule, and this Court? Looking beyond the contemporaneous billing records in this case does not make any sense, and arguably would be error. The comparison should be apples to apples.

Federal Defendants do not necessarily agree that all of the time spent by the attorneys for the other plaintiff-groups was entirely reasonable, but this is clearly *the best evidence* of what a reasonable lawyer would bill for each task throughout this litigation. Moreover, the declarations from the attorneys for the other plaintiff-groups are not paid experts, but rather fellow environmental law practitioners that regularly practice in the District of Montana and that have sworn under penalty of perjury that their billing records are accurate. The existing billing records in this case are the relevant points of comparison.[10]

---

[10] The Ninth Circuit stated that it is Plaintiffs' burden to demonstrate that their hours are reasonable. *Gates,* 987 F.2d at 1397–98. But here, despite knowing Federal Defendants' fundamental objection, Plaintiffs chose to ignore the relevant evidence already submitted to the Court, *i.e.,* other plaintiff-groups' billing records. Whether this is viewed as a failure to carry their initial burden under *Gates*, or a failure to rebut previously filed evidence, Plaintiffs have quite simply failed to address the best available evidence in this case and should not be allowed address it for the first time on reply. *Id.; Inst. for Wildlife Prot. v. U.S. Fish & Wildlife Serv.,* No. 07-CV-358-PK, 2008 WL 4866063, at *4 (D. Or. Nov. 5, 2008) (court declined to review supplemental fee valuation declaration, "in the exercise of its discretion declines to consider the new evidence.").

*Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992). The Court does not need to look to an entirely different case.

Finally, Federal Defendants do not contest Plaintiffs' hourly rates, as they appear to be consistent with this Court's previous opinions and the years of experience for each attorney. *Native Ecosystems Council v. Krueger*, CV 12-27-M-DLC, 2019 WL 1489839, at *4 (D. Mont. Apr. 4, 2019); *All. for the Wild Rockies v. Savage*, CV 15-54-M-DLC, 2019 WL 3293425, at *6-7 (D. Mont. July 22, 2019). However, if these attorneys are going to bill at high hourly rates, the number of hours they spent on various tasks is clearly excessive. There is obviously a disconnect between Plaintiffs' requested hourly rates and the number of hours when compared to the other billing records and hourly rates of the other plaintiff-groups in this case. Other attorneys in this case with roughly the same hourly rates (or even less) spent considerably less time efficiently pursuing their case. And admittedly, they were successful. But here, either Plaintiffs' hourly rates are too high, or they spent too much time. Both cannot be true. *Hernandez v. Grullense*, Case No. 12-cv-03257-WHO, 2014 WL 1724356, at *6 (N.D. Cal. Apr. 30, 2014) (citing *Delson v. CYCT Mgmt. Grp.*, No. C 11–03781 MEJ, 2013 WL

1819265, at *8 (N.D. Cal. Apr. 30, 2013) ("[o]ne of the trade offs of being an expert in a specific fi[el]d of law is the expectation that tasks will be completed with greater efficiency because the knowledge base and resources have already been well-established.").  In either case, Plaintiffs' billing practices are not reasonable, the number of hours is excessive, and the Court should reduce the fee award.  *Envtl. Prot. Info. Ctr., Inc. v. Pac. Lumber Co.*, 229 F. Supp. 2d 993, 1005 (N.D. Cal. 2002), *aff'd sub nom. Envtl. Prot. Info. Ctr. v. Pac. Lumber Co.*, 103 F. App'x 627 (9th Cir. 2004) ("The court may adjust these hours downward if it believes the documentation to be inadequate, if the hours were duplicative, or if the hours were either *excessive or unnecessary*.") (emphasis added).

### A. Plaintiffs' Fee Experts Failed to Evaluate Contemporaneous Billing Records in This Case and Therefore the Testimony is Unreliable and Should be Excluded.

In *Blum v. Stenson*, 465 U.S. 886, 901–02 (1984), the Supreme Court held that it was plaintiff's burden to establish fee entitlement through reliable evidence.  In that case the Supreme Court reversed the district court's fee award in part because the evidentiary record was

lacking.  *Id.* ("Respondents introduced no evidence that enhancement was necessary to provide fair and reasonable compensation. They therefore have failed to carry their burden of justifying entitlement to an upward adjustment.").  It is thus incumbent on Plaintiffs to introduce reliable evidence providing support that the number of billable hours is reasonable.  Here that was not done.

Plaintiffs present several expert fee declarations to support their requests.  However, none of the proffered experts state that they reviewed the contemporaneous billing records of the attorneys for the other plaintiff-groups in this case.  *See* ECF_342-5 (Decl.  of Matthew B. Hayhurst) ¶ 6 (limiting timesheet review to just Guardians' attorneys); ECF_342-6 (Decl. of L. Randall Bishop) ¶ 4 (limiting timesheet review to just Guardians' attorneys); ECF_344-2 (Decl. of James H. Goetz ("Goetz Decl."))  ¶¶ 6, 11 (Mr. Goetz states that he was provided with various documents "including a flash drive with all of the pleadings," ¶ 6, but nevertheless does not address the other billing records, except to state that he does not have an opinion on the Plaintiffs' co-counsel from the Ziontz law firm, ¶ 11)); ECF_344-3 (Decl. of Roger Sullivan ¶ 14 (limiting timesheet review to just Northern Cheyenne's attorneys).

These highly relevant points of comparison were just ignored by the fee valuation experts.

Plaintiffs had actual knowledge that the disparity in the number of hours among the plaintiff-groups was Federal Defendants' fundamental objection to the pending motions, yet Plaintiffs' experts entirely failed to review, much less address, contemporaneous billing records from the other attorneys *in this case*. Counsel for the other plaintiff-groups filed their billing records with the Ninth Circuit and this Court months before Plaintiffs renewed their motions so there was no difficulty in obtaining these points of comparison. And at least one fee expert was provided with these pleadings before formulating his opinion. Goetz Decl. ¶ 4-6 (noting that he had "all of the pleadings"). Even odder, Plaintiffs' experts do not even recognize one another's opinions despite the on-going requirement to coordinate among plaintiffs' counsel as specified in the consolidation order. ECF_40, 178. Quite simply, these fee valuation experts ignored (perhaps at no fault of their own) the most relevant and reliable data when formulating their opinions. Instead, their opinions are premised on an unreliable methodology and therefore should be excluded.

Under Rule 702, expert testimony must be "based on sufficient facts or data" and must "reliably appl[y] the principles and methods *to the facts of the case*." F.R.E. 702 (b) & (c) (emphasis added). In accord, this Court must perform a gatekeeping function, even with fee valuation experts. *Kumho Tire v. Carmichael*, 526 U.S. 137, 150 (1999) (clarifying that *Daubert* applies to all expert testimony and specifically referencing "attorney's fee valuation"). Under *Daubert*, many courts have excluded expert testimony when the expert testimony ignores highly relevant data. *Abarca v. Franklin Cty. Water Dist.*, 761 F. Supp. 2d 1007, 1054 (E.D. Cal. 2011) ("Many cases decided under *Daubert* have excluded opinion testimony from experts who ignored facts or considerations that must be considered under methods based on reliable principles.").

In determining whether the number of hours spent on a case is reasonable, a fee valuation expert, just like a district court, must examine the billing records submitted by the prevailing parties in the case. *Gonzalez*, 729 F.3d at 1202 ("to determine whether attorneys for the prevailing party could have reasonably billed the hours they claim to their private clients, the district court should begin with the billing

records the prevailing party has submitted.").  For a fee valuation expert, reviewing the available billing records in the case is perhaps the only reliable methodology for arriving at a reasonable fee valuation opinion.  *Cf. United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir.1990) (examining other cases to establish prevailing market rate).  Even opposing counsel's billing records have been found relevant to this inquiry.  *Gonzalez*, 729 F.3d at 1202.  Yet here, Plaintiffs' fee valuation experts ignored billing records submitted by the other prevailing parties in this case, and then proceeded to provide this Court a fee valuation opinion.  *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319,1326 (D.C. Cir. 1982) (*per curiam*) ("The District Court's ... inquiry is aided little by an affidavit which just offers one attorney's conclusory and general opinion on what [the relevant market] rate is. Nor is it helpful if the affiant simply states that he is familiar with the attorney and the litigation and that he thinks the fee request is reasonable.").  This is akin to the expert having five sets of relevant data and only examining one set before arriving at a conclusion.  But of course, cabined data examinations easily result in pre-determined conclusions.

Not only is Plaintiffs' experts' methodology highly unreliable, it does not even come close to complying with controlling case law for arriving at fee valuations, which requires a review of the prevailing parties' billing records in the case. *Id.* at 1325-26. When such a truncated analysis occurs, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. v. Joiner*, 522 U.S. 136, 146 (1997). That is what should occur here. The Court should exclude the proffered fee valuation testimony because the methodology is highly unreliable and the opinions are deeply flawed. Without reliable evidence of reasonable hours, Plaintiffs failed to carry their burden and the Court must reject or reduce any award.

## B. Plaintiffs' Hours are Excessive Because There Was Needless Duplication.

There is a growing trend in environmental law where one entity will file a complaint in federal district court challenging the government, followed by similarly-situated litigants filing their own, nearly identical complaint in the same court at roughly the same time

alleging the same claims.[11]  The serial filing of complaints does not add anything of substance to the dispute, but merely register those same grievances in slightly different words.  *See supra* at 5-7.  This tactic needlessly complicates and delays proceedings, burdens the courts, and as relevant here, can add substantial expense that could otherwise be avoided.[12]

In contrast, every litigant has an obligation to "secure the just, speedy, and *inexpensive determination* of every action and proceeding." Fed. R. Civ. P. 1 (emphasis added).  This Court recognized as much

---

[11] *See e.g., Center for Biological Diversity v. de la Vega,* 19-cv-5206 (N.D. Cal. Aug. 21, 2019); *California v. de la Vega,* 19-cv-6013 (N.D. Cal., Sept. 25, 2019); *Animal Legal Def. Fund v. de la Vega,* 19-cv-06812 (N.D. Cal., Oct. 21, 2019) (all challenging the same regulations in the same court); *see also WildEarth Guardians v. United States Fish & Wildlife Serv.,* 342 F. Supp. 3d 1047, 1055 (D. Mont. 2018) ("Plaintiff Center for Biological Diversity filed a separate action, raising similar NEPA challenges. See CV 17-99-M-DWM. The two cases were consolidated, (Doc. 68), and the WildEarth case designated the lead case.").

[12] This growing trend may be an effort to circumvent the general rule that intervenors may not collect attorneys' fees unless they play a special role.  *Grove v. Mead Sch. Dist. No.,* 354, 753 F.2d 1528, 1535 (9th Cir. 1985) (affirming denial of award where intervenor "did not play an exceptional role in this litigation"), *cert. denied*, 474 U.S. 826 (1985).

when it asked for the parties' views on consolidation, *sua sponte*, and

ultimately issued its consolidation order.  ECF_40, 178.  This Court,

consistent with Rule 1, ordered the parties to avoid duplication.  Some

of the plaintiff-groups adhered to the Court's order and efficiently

presented specific claims that furthered the Court's understanding of

the relatively straightforward legal issue of whether FWS complied

with the Ninth Circuit's remand order over the 2007 delisting rule.

ECF_323 (Crow billing records).  And where that occurred, Federal

Defendants settled with those plaintiff-groups.  *See e.g.,* ECF_309

(Alliance requesting $181,315); ECF_334 (agreeing to $175,000).

However, Plaintiffs acted inconsistently with the Court's consolidation

order thereby compounding duplication.  In doing so, Plaintiffs ran

afoul of Rule 1 and the Court's consolidation order adding unnecessary

expense.  This needless duplication contributed to the excessive hours

described above and the Court should accordingly reduce any fee award.

Federal Defendants are cognizant that the Ninth Circuit

addressed a similar issue in *Ass'n of California Water Agencies v.*

*Evans*, 386 F.3d 879 (9th Cir. 2004).  There, the panel found that two

different sets of plaintiffs could collect for roughly the same relief

against the government in two different cases. *Id.* However, in so holding, the Ninth Circuit repeatedly stressed not just once, but twice, that: (1) the litigants and case at issue were the "first to file" the complaint, and (2) the government had made no effort to consolidate the cases. *Id.* at 887 ("Here Plaintiffs filed the first action and Defendants made no effort to consolidate the actions."); *id.* at n.7 ("Defendants made no effort to seek consolidation of the cases."). Certainly, the fact that those plaintiffs were the first to file and the lack of consolidation were defining factors in whether two different sets of plaintiffs could collect for the same result. *Id.* This is not entirely unreasonable -- if the cases were not consolidated, then duplication becomes a necessity to effectively pursue the claims in two separate forums.

Those two factors, however, are not present in this litigation. Northern Cheyenne and Guardians' suits followed the Crow Indian Tribe complaint by nearly two months. ECF_1 (Crow filing June 30, 2017; Guardians, ECF_1 (filing on August 30, 2017); Northern Cheyenne, ECF_1 (filing on August 30, 2017). Their complaints also appear to mimic one another. ECF_22 (Crow ¶ 155 identifying and delisting a distinct population segment violates the ESA); ¶ 167 (failing

to address the remnant); ¶ 187 (failing to use the best available science)); *see also*, 17-cv-00118, ECF_1 (Guardians complaint ¶ 77 (identifying and delisting a distinct population segment violates the ESA), ¶ 105 (failure to address remnant), ¶ 116 (failure to use best available science); 17-cv-00119, ECF_1 (Northern Cheyenne complaint ¶ 78 (failure to address remnant), ¶ 82 (APA notice and comment). More importantly, the Court consolidated these cases and expressly directed the parties to avoid duplication. And because the cases were consolidated, there could have been more coordination to reduce the number of hours spent on almost every task that post-dates the filing of the complaint.

Plaintiffs will no doubt counter that they endeavored to coordinate, but even with the best coordination (which did not occur here) there will be the inevitable duplication in consolidated cases. In fact, the mere act of coordinating is duplicative itself as multiple parties are performing the same task. Plaintiffs cannot deny that there was significant duplication (to a multiplier of six) in this case -- the only question is whether they deserve to be fully compensated for their duplication. And this Court already answered that question in the

negative by issuing its consolidation order and placing the parties on notice that they should not duplicate work. ECF_40, 98, 178; *see also All. for Wild Rockies v. United States Dep't of Agric.*, No. CV 11-76-M-CCL, 2016 WL 4766234, at *9 (D. Mont. Sept. 13, 2016) (deducting for excessive duplication: "Such inordinate multiplication of attorney fee expert opinions should not be encouraged, lest it become a minor industry unto itself."); *Gates v. Rowland,* 39 F.3d 1439, 1449 (9th Cir. 1994) (where multiple firms are engaged in litigation, the test for compensation is whether the time expended was duplicative).

There is an inevitable duplication when litigants file serial complaints. But this does not need to occur for successful judicial review. These litigants know how to coordinate their efforts and avoid needless duplication. Even in the dispute over this particular grizzly population and the 2007 delisting rule, Sierra Club and Center for Biological Diversity coordinated with Alliance, among others, and were able to file one, coordinated complaint challenging the 2007 Grizzly Final Rule. *Western Watersheds v. Servheen*, 4:07-cv-00243-MHW (D. Id.) (ECF 1). Similarly, in the past and with other challenges, these plaintiff-groups have coordinated to file one complaint, rather than two,

or five.  *See e.g., WildEarth Guardians v. Mark*, 741 F. App'x 404, 406

(9th Cir. 2018) (Guardians and Center for Biological Diversity as co-

plaintiffs); *Center for Biological Diversity v. Zinke*, 2017 WL 1245638

(D. Mont.) (complaint including Center for Biological Diversity,

WildEarth Guardians, and the Humane Society as co-plaintiffs).[13]

While this past conduct is not dispositive on entitlement, it is a factor

the Court should weigh in evaluating whether the claimed hours are

excessive.

To be clear, Federal Defendants are not taking the position that

these Plaintiffs are barred from seeking fees at all in this case.

---

[13] Coordination is obviously possible – in fact regularly occurred in the past – but now there seems to be a deliberate effort to increase duplication, rather than minimize it.  *See Ctr. for Biological Diversity v. Zinke*, Case No: 4:15-cv-00019-JGZ (D. Ariz. Jan. 4, 2021); *WildEarth Guardians v. Ashe*, Case No: 4:15-cv-00285 (D. Ariz. Mar. 19, 2018) (same attorneys here challenging the same Mexican wolf rule in two separate suits).  This serial filing of complaints may be designed to further public relations or fundraising efforts instead of efficiently litigating the claims before the Court.  *See, e.g.,* WildEarth Guardians, *A Force of Nature* (July 13, 2020), https://wildearthguardians.org/brave-new-wild/news/grizzly-bear/; *see also*, Maggie Caldwell, *Bears in the Crosshairs* (Jan. 17, 2019), https://earthjustice.org/features/yellowstone-grizzly-bears-in-the-crosshairs

Although it is unfortunate that Plaintiffs chose not to coordinate in filing a common complaint, as they have done in the past, in the Ninth Circuit, it does not appear they are precluded from filing serial, nearly identical complaints. But that does not mean they are entitled to compensation for every minute of time spent on this case. *Sorenson*, 239 F.3d at 1147 (billed hours that "reflect duplicative efforts and excessive staffing" are unreasonable and should not be part of the lodestar calculation); *Stonebrae, L.P. v. Toll Bros.*, No. C-08-0221 EMC, 2011 WL 1334444, at *13 (N.D. Cal. Apr. 7, 2011) (work by multiple law firms in two suits were deemed duplicative because one firm took the lead on certain motions, but the other firm billed 451 hours for those motions.). Plaintiffs' co-participation was not truly required for meaningful judicial review. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill."). If the Court does not discount for this questionable duplication, it creates a perverse incentive for parties to file serial complaints thereby complicating judicial review and burdening the courts. Plaintiffs' needless

39

duplication contributed to the excessive hours described above and warrants a substantial reduction in the amount of fees. *See Nat'l Rifle Ass'n v. Village of Oak Park*, 871 F.Supp.2d 781, 792 (N.D. Ill. 2012) (with two consolidated cases only the first firm was entitled to compensation because the court could not determine what was duplicative or overlapping work).

### C. Specific Objections to Guardians' Excessive Hours.

Even if the Court finds Guardians' fee valuation evidence admissible, the number of hours spent litigating this case is unreasonable and warrants a substantial decrease in any award. Guardians seek **$515,740** in fees and costs. This is roughly *three times* more than the other reasonable fee requests in this case. And it is nearly $160,000 more than the Northern Cheyenne's unreasonable request. The attorneys for Guardians are professional and Federal Defendants do not contest their hourly rate in these proceedings. But at those high hourly rates, Guardians' attorneys spent way too much time prosecuting their case. At some point diligence becomes overkill. A normal client would not tolerate inefficient billing practices, and this

burden should not be shifted to the United States taxpayer.[14] *Hensley*, 461 U.S. at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's adversary pursuant to statutory authority.") (quoting *Copeland*, 641 F.2d at 891.

One of the biggest problems with Guardians' hours is that the attorney with the highest hourly rate performed most of the tasks. ECF_342 at 28 (983 hours); *id.* at 28 (seeking between $320 and $460/hour). This included many administrative tasks. *See e.g.,* ECF_342-1 at 20 (spending nearly an hour on service/filing); ECF_342-1 at 23, 30, 32-33 (spending over six hours printing and organizing documents). Those tasks should have been performed by a paralegal at a lower hourly rate. *HTV Indus. v. Agarwal*, 317 F. Supp. 3d 707, 721 (S.D.N.Y. 2018) ("Courts frequently reduce fee requests where work

---

[14] Counsel for Guardians states that this is "the first time in my nearly 23 years of federal environmental practice that I was unable to resolve our attorneys' fees claims with Federal-Defendants." Bishop Decl. ¶ 15, ECF 342-1. While the ability to settle previous claims is irrelevant to the Court's analysis here, it is worth noting that the United States settled three of the five fee requests in this case. Moreover, and somewhat similarly, this is the first time Federal Defendants have seen a fee request that is triple the amount of other similarly situated plaintiffs without any explanation for the substantial increase.

that could have been handled by more junior lawyers was instead performed by a senior partner.").  As a court in the Northern District of California noted, a senior partner's hourly rate "is reasonable only in an environment where that senior partner participates only in higher-level tasks, and delegates more mundane tasks to lower-paid employees." *Finkelstein v. Bergna*, 804 F. Supp. 1235, 1238 (N.D. Cal. 1992).  That did not occur here.

Another factor is Guardians' lack of success with certain arguments.[15]  Guardians spent an inordinate amount of time arguing that FWS did not have the authority to identify and delist a distinct population segment.  ECF_ 186 at 24-30.  Guardians pursued this argument vigorously in this Court and Ninth Circuit. Case: 18-36030,

---

[15] The Ninth Circuit has recognized that courts have discretion to apportion fees equally among culpable parties.  The inverse must also be true.  That is, this Court would have the same discretion to reduce fees for unsuccessful arguments against one defendant, thereby limiting any recovery for one plaintiff in a consolidated case.  *Jones v. Espy*, 10 F.3d 690, 692 (9th Cir. 1993); *accord Hogan v. Robinson*, No. CVF-03-6408 LJO GSA, 2007 WL 4557097, at *5 (E.D. Cal. Dec. 21, 2007) ("[w]hen multiple parties are liable for attorneys' fees, the district court has discretion to apportion fees according to "relative culpability")) (citation omitted).

ECF_91 at 74-87.  And it did so even though the D.C. Circuit had already decided the issue.  Plaintiffs chastise FWS for not capitulating in light of *Humane Society*, ECF_344 at 14, but the same criticism is equally applicable to Guardians.  865 F.3d at 597.  Guardians likewise spent time on other issues that no court ever reached.  Indeed, Guardians candidly recognized this deficiency in its fee briefing.  ECF_342 at 26 ("Guardians notes that this Court and the Ninth Circuit did not reach the alternative claims briefed and for which Guardians seeks time for.").[16]

---

[16] In Guardians' own words, "This includes Guardians' claims about the Service's non-compliance with the grizzly bear's original listing rule, the Service's failure to analyze the cumulative threats to Yellowstone grizzlies, and additional claims regarding the Yellowstone grizzly bear's DPS status."  ECF_342 at 26; *but see, Entm't Research Group v. Genesis Creative Grp.,* 122 F.3d 1211, 1230–31 (9th Cir. 1997) (appropriate to reduce award based on limited success) (citing *Hensley*, 461 U.S. 424, 436–37 (1983)); *Wild Equity Inst. v. City & Cnty of San Francisco*, 2013 WL 3338499, at 5 (N.D. Cal. 2013) (reducing plaintiffs' initial request of $1,306,400 for attorneys' fees to $326,6000 to account for limited success under the ESA); *Azua ex rel. Dupree v. Nat'l Steel & Shipbuilding Co.*, 534 F. App'x 618, 619 (9th Cir. 2013) (affirming decision to "reduce the fee award by 20 percent to account for lack of success"); *Robins v. Matson Terminals*, 283 F. App'x 535 (9th Cir. 2008) (affirming decision to "reduce the lodestar fee [award] by fifty percent" based on the partial success of the claim)

## D. Specific Objections to Northern Cheyenne's Excessive Hours.

Although the Northern Cheyenne's request is less than Guardians' request, it still far exceeds any other plaintiff-group in this litigation. One of the more obvious flaws is that there was excessive staffing. All told, *nine* different attorneys and *four* different law clerks were employed by the Northern Cheyenne on this case. ECF_344 at 22-23. Of the nine different attorneys, three were partners, and one was a managing attorney. *Id.* No other plaintiff-group employed that many attorneys, much less four senior attorneys, on this case. In fact, the Northern Cheyenne used almost as many attorneys as the other five plaintiff-groups *combined*. This compounded the excessive billing and duplication that was already occurring among the other five plaintiff-groups. *Union Cent. Life Ins. Co. v. Berger*, 2013 WL 6571079, at *5 (S.D.N.Y. Dec. 13, 2013) ("assigning numerous attorneys to a straightforward matter presents a risk of inefficiency, duplication, and unnecessary billing"); *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 953 (1st Cir. 1984) (finding "we see no justification for the presence of two top echelon attorneys at each proceeding" particularly where one

attorney "was merely in attendance [and did not] actually address[] the court").

The problem with using so many attorneys is that there is inherent duplication, particularly with one attorney explaining to another the details of the case, which then results in excessive conferencing exacerbating the fee request. *Welch v. Metro. Life Ins.,* 480 F.3d 942, 949 (9th Cir. 2007) (5.75 hours billed for intra-office conferrals unnecessary, especially given counsel's experience); *Cruz v. Starbucks Corp.*, 2013 WL 2447862, at *8 (N.D. Cal. June 5, 2013) (reducing hours claimed due to excessive conferencing). "A party is certainly free to hire and pay as many lawyers as it wishes, but cannot expect to shift the cost of any redundancies to its opponent." *Asia Pac. Agric. & Forestry Co. v. Sester Farms*, 2013 WL 6157263, at *4 (D. Or. 2013). For example, the nine Northern Cheyenne attorneys, collectively, have at least 150 billing entries for internal conferences, calls, and emails. ECF_345-5; ECF_346-1. While it is unclear exactly how much time can be attributed to Northern Cheyenne's internal conferencing because of its attorneys' block billing, almost seven hours were billed exclusively for internal calls and discussions. ECF_345-5; ECF_346-1. Even if only

three minutes are attributed to every other entry that includes time billed for an internal conference (and many of those entries include more than one internal call or discussion), the total time spent on internal conferencing would amount to 13.7 hours.

In addition, like Guardians, considerable time was spent by senior attorneys with the highest requested hourly rates. ECF_344 at 22. And these attorneys were performing administrative or clerical tasks, better left for someone with a lower hourly rate. *See, e.g.* ECF_345-5 at 5 (managing attorney billed for proofing, finalizing, and coordinating filing of motion and supporting documents at a rate of $340 per hour); ECF_345-5 at 6-7 (again, coordinating the filing of documents at the same rate). No reasonable client would stand for four partners billing at high hourly rates on relatively mundane tasks, and the United States should not be expected to do so either.

## II. PLAINTIFFS SHOULD NOT RECOVER FOR TIME SPENT ON THEIR FEE AND COST MOTIONS.

Plaintiffs should not be able to recover for their work on preparing their motions for attorneys' fees and costs. Building on an unreasonable starting point is unwarranted. The Court has the discretion to deny

this request and it should exercise that discretion here. *Kinney v. Int'l Bhd. of Elec. Workers*, 939 F.2d 690, 695 (9th Cir. 1991) ("Exorbitant claims [to recover for fee litigation] can and will be rejected in the exercise of the court's broad discretion. Indeed, any award at all of fees for fee litigation may be denied if the court concludes fees already awarded have provided sufficient compensation to counsel.") (citations omitted).

To the extent the Court allows "fees on fees," the enhanced, hourly rate charged for this non-specialized work is far too high. This Court has already found that enhanced rates are not warranted in such circumstances. *Native Ecosystems Council*, 2019 WL 1489839, at *5. The fact that the appellate commissioner, in an unpublished opinion, found differently, is not persuasive.

Finally, to the extent the Court allows "fees on fees," it should discount by the same percentage as arrived at for the above-mentioned deductions. *Inst. for Wildlife Prot.*, No. 07-CV-358-PK, 2008 WL 4866063, at *3 ("the Ninth Circuit has approved a reduction in attorneys' fees for "fee-on-fees" by the ratio of the fees actually awarded

in the underlying fee dispute to the amount requested.") (citing

*Thompson v. Gomez*, 45 F.3d 1365, 1366–68 (9th Cir.1995)).

## III.   PLAINTIFFS SHOULD NOT RECOVER THEIR COSTS

Guardians and Northern Cheyenne seek $3,150.00 and $1,428.50

respectively for costs.  The Ninth Circuit stated that each party should

bear its own costs.  *Crow Indian Tribe*, 965 F.3d at 681 ("Each party to

bear its own costs.").  There was no limitation on the scope of that

holding to just costs on appeal.  Accordingly, this Court should disallow

any costs at all.[17]

## CONCLUSION

Plaintiffs would like this Court to review their billing records in a

vacuum without regard to the other plaintiff-groups in this case.

Viewed in isolation, one particular billing entry or another may appear

to be superficially reasonable.  But when that fee request is examined

in the context of the five other requests in this case, the magnitude and

unreasonableness of Plaintiffs' demands is apparent.

---

[17] To the extent the Court allows costs, it should strictly limit those costs in accordance with *Rimini St. v. Oracle USA,* 139 S. Ct. 873, 878 (2019) (analyzing an analogous citizen-suit provision holding that costs are limited to those provided for under 28 U.S.C. § 1920).

Federal Defendants acknowledge that Plaintiffs are entitled to a fee award in each case. But that award needs to be reasonable. In comparison to the other fee requests in this case, Plaintiffs' demands are excessive and unreasonable. Federal Defendants already committed to pay $482,804 to three plaintiff-groups in this case. And now Plaintiffs want at least **$871,774** more. This is far too much for a relatively straightforward case that did not even go to trial, especially in light of the overwhelming evidence presented by the other plaintiff-groups.

The number of hours, whether spent on duplicative tasks, excessive conferencing, unsuccessful arguments, or inappropriate staffing, are simply unreasonable. Plaintiffs' fee requests should be substantially reduced to bring them in line with the other requests and billing records in this consolidated case. The Court should award no more than **$175,000** per case.

Respectfully submitted: February 26, 2021.

*/s/ Coby Howell*
COBY HOWELL, Senior Trial Attorney

MICHAEL R. EITEL, Senior Trial Attorney
DEVON L. FLANAGAN, Trial Attorney
U.S. Department of Justice
c/o U.S. Attorney's Office
1000 SW Third Avenue
Portland, Oregon 97204-2902
Tel: (503) 727-1023 | Fax: (503) 727-1117
Email: Coby.Howell@usdoj.gov

*For Federal-Defendants*

## CERTIFICATE OF SERVICE & COMPLIANCE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the attorneys of record. I certify that this brief is less than 9,750 words in accordance with the Court's order, ECF_350.

*/s/ Coby Howell*
COBY HOWELL
Senior Trial Attorney
U.S. Department of Justice