Matthew K. Bishop (Mont. Bar No. 9968)
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
(406) 324-8011
bishop@westernlaw.org

John R. Mellgren, *admitted PHV*
Western Environmental Law Center
120 Shelton McMurphey Blvd., Suite 340
Eugene, Oregon 97401
mellgren@westernlaw.org

Kelly E. Nokes (Mont. Bar No. 39465862)
Western Environmental Law Center
P.O. Box 218
Buena Vista, Colorado 81211
nokes@westernlaw.org

*Counsel for Plaintiff, WildEarth Guardians (No. 17-118)*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CROW INDIAN TRIBE et al., | CV 17-89-M-DLC |
| Plaintiffs, | (Consolidated with Case Nos. CV 17-117-M-DLC, CV 17-118-M-DLC, CV 17-119-M-DLC, and CV 17-123-M-DLC) |
| vs. | |
| UNITED STATES OF AMERICA et al., | |
| Federal-Defendants. | REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS (DOC. 341) |
| and | |
| STATE OF WYOMING, et al., | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES........................................................................ii

ARGUMENT ..................................................................................... 2

A.    The Service Ignores Critical Differences Between Guardians' and the Tribe's, Alliance's, and Society's Cases ............................. 2

B.    The Service Failed to Meet its Evidentiary Burden on Rebuttal ... 8

C.    Guardians Avoided Unnecessary Duplication............................. 10

D.    Guardians' Attorneys' Time was not Excessive........................... 11

E.    Guardians was Compelled to Litigate Fees.................................. 14

F.    The Court Should Award Guardians its Costs and Expenses ...... 15

CONCLUSION ................................................................................ 16

CERTIFICATE OF COMPLIANCE........................................................ 17

# TABLE OF AUTHORITIES

## CASES

*Alliance for the Wild Rockies v. Savage,*
　　No. CV 15-54-M-DLC, 2019 WL 3293425 (D. Mont. July 22, 2019).. 15

*Alliance for the Wild Rockies v. U.S. Army Corps of Engineers,*
　　No. 3:16-CV-1407-HZ, 2019 WL 1749518 (D. Or. April 14, 2018)..... 16

*Ass'n of California Water Agencies v. Evans,*
　　386 F.3d 879 (9th Cir. 2004) ............................................................... 11

*Crow Indian Tribe v. United States,*
　　343 F. Supp. 3d 999 (D. Mont. 2018) ......................................... 3, 5, 13

*Crow Indian Tribe v. United States,*
　　965 F.3d 662 (9th Cir. 2020) ............................................................ 3, 4

*Defs. of Wildlife v. Hall,*
　　No. CV-08-56-M-DWM (D. Mont. Feb. 17, 2009) ................................. 8

*Gates v. Deukmejian,*
　　987 F.2d 1392 (9th Cir. 1992) ........................................................... 8, 9

*Greenpeace, Inc. v. Stewart,*
　　No. 17-35945, 2020 WL 2465321 (9th Cir. May 12, 2020) ............. 9, 15

*Hensley v. Eckerhart,*
　　461 U.S. 424 (1983) ...................................................................... 11, 14

*Ibrahim v. U.S. Dep't of Homeland Security,*
　　912 F.3d 1147 (9th Cir. 2019) ............................................................ 13

*Kinney v. Int'l Bhd. of Elec. Workers,*
　　939 F.2d 690 (9th Cir. 1991) .............................................................. 14

*Moreno v. City of Sacramento,*
   534 F.3d 1106 (9th Cir. 2008) ............................................................. 7

*Nat'l Rifle Ass'n v. Vill. of Oak Park,*
   871 F. Supp. 2d 781 (N.D. Ill. 2012) ................................................... 11

*Rimini St., Inc. v. Oracle USA, Inc.,*
   139 S. Ct. 873 (2019) ............................................................................ 16

*Webb v. Sloan,*
   330 F.3d 1158 (9th Cir. 2003) ............................................................. 14

## STATUTES

16 U.S.C. § 1540(g)(4) .............................................................................. 15

28 U.S.C. § 1920 ...................................................................................... 15

## OTHER AUTHORITIES

Fed. R. App. P. 39 ................................................................................... 15

Federal Defendants (the Service) concede WildEarth Guardians (Guardians), Plaintiff in Case No. 17-118, is entitled to an attorney fee award under the Endangered Species Act (ESA). (Doc. 355 at 9). The Service also states that Guardians' attorneys are "professional" and "good attorneys" and their requested rates are reasonable. (*Id*. at 11, 34, 48). Accordingly, the only remaining issue is the amount of time Guardians' attorneys spent on this complex, four-plus year case (roughly 1,600 hours).

The Service asserts this amount of time is unreasonable because: (1) the attorneys in the other consolidated cases representing the Crow Indian Tribe (Tribe), Alliance for the Wild Rockies (Alliance), and Humane Society (Society) achieved the same result in less time; (2) Guardians' time is not supported by reliable evidence; (3) Guardians' time is unnecessarily duplicative; (4) Guardians' time is excessive given the results obtained; and (5) no fees-on-fees time should be allowed. The Service also objects to Guardians' request for costs. None of these arguments has merit.

## ARGUMENT

**A.    The Service Ignores Critical Differences Between Guardians' and the Tribe's, Alliance's, and Society's Cases.**

To seek to show that Guardians' attorneys spent too much time prevailing in its case, the Service ignores the relevant evidence *in this* fee dispute, *i.e.*, the actual time incurred, tasks undertaken, claims pursued, and results obtained by Guardians. Instead the Service compares and contrasts Guardians' time on various tasks (*i.e.*, case management, background research, summary judgment and related filings, etc.) with time the attorneys for the Tribe, Alliance, and Society spent in their cases. The Service insists this provides an "apples to apples" comparison against which Guardians' attorneys' time can be judged. (Doc. 355 at 32). But this approach fails to take into account the critical differences that exist amongst the cases. The briefing, hearing transcripts, and docket sheet demonstrates that while Guardians, the Tribe, the Alliance, and the Society (as well as the Northern Cheyenne and Robert Aland) all challenged the same agency decision, they did so in very different ways.

For example, the Court agreed to stay the Tribe's case to allow the other plaintiffs' ESA claims to go forward so the Tribe's attorneys

expended very little (if any) time on briefing. (Doc. 38 at 7 n.3); *see also*
*Crow Indian Tribe v. United States*, 343 F. Supp. 3d 999, 1003 n.1 (D.
Mont. 2018) (discussing stay). This is why the Tribe chose to not file a
brief in opposition to the Service's motion for a stay. (Doc. 85). The
Tribe's attorney did appear telephonically at the stay hearing but did so
on mute after informing the Court he would not argue. (Doc. 263 at 12).
Likewise, on summary judgment, the Tribe elected to not contribute to
the plaintiffs' joint statement of undisputed facts and it filed only a
short, five-page partial motion for summary judgment with no
supporting memorandum. (Doc. 188). The Tribe did not even file a
reply. At the hearing, the Tribe simply introduced the other attorneys –
a task its attorney called a "fairly easy job." (Doc. 277 at 13). On appeal,
the Tribe again elected to not brief the merits and it raised only a short
jurisdictional argument (Ninth Cir. Dkt. Entry 96) that the Ninth
Circuit rejected. *Crow Indian Tribe v. United States,* 965 F. 3d 662,
675–76 (9th Cir. 2020).

Despite this relatively minimal amount of work, the Service
agreed to pay the Tribe $132,804 in attorneys' fees (Doc. 355 at 23) – a
roughly 90 percent return on its $147,804 request (Doc. 355 at 22). In

other words, the Service agreed to pay the Tribe $132,804 in fees for success in a case *its attorneys did not brief or argue*. That is the Service's prerogative. But the Service should not be allowed to then use its settlement and the Tribe's time entries to attempt to show that Guardians' time was unreasonable.

The same is true for the Service's assertions related to time billed by the Alliance. The Alliance chose to focus largely on a single issue: the loss of historic range for grizzlies. (Docs. 192, 230). The Alliance briefed this issue on summary judgment and presented a short argument at the hearing (but did so unexpectedly, and only for a minute, after this Court asked about it). (Doc. 277 at 59-63). Ultimately, however, the Court elected not to reach the historic range claim and, on appeal, the Alliance dropped it. (Ninth Cir. Dkt. Entry 93). As such, on appeal the Alliance – much like the Tribe – did not brief the merits of this case. *Id.* Instead, the Alliance focused exclusively on a jurisdictional argument the Ninth Circuit rejected. *Crow Indian Tribe,* 965 F. 3d at 675–76.

Despite this, the Service agreed to pay the Alliance $175,000 in attorneys' fees (Doc. 355 at 23) – a roughly 95 percent return on its $181,315 request (Doc. 355 at 22). Again, this is the Service's

4

prerogative. But the Alliance's attorneys' billing records are not a fair or appropriate comparison to Guardians' billing records in this case.

The Society's case is also materially different. The Society targeted the adequacy of the Service's grizzly bear conservation strategy. (Doc. 194). This Court, however, held that many of the Society's claims were "foreclosed by the Ninth Circuit's opinion in *Greater Yellowstone." Crow Indian Tribe*, 343 F. Supp. 3d at 1015. Accordingly, this Court largely ruled against the Society except on one claim: the lack of a recalibration mechanism in the conservation strategy. *Id.* at 1016–17. But the Service never pursued this issue on appeal; it was raised only by the Defendant-Intervenors. (Ninth Cir. Dkt. Entry 45 at 9). And yet, despite this fact, the Service agreed to pay the Society $175,000 in attorneys' fees (Doc. 355 at 23) – the same amount it contends Guardians is entitled to here. (Doc. 355 at 57).

Notably, in its 58-page response brief, the Service fails to address *any* of these material differences between Guardians' case and the three other cases it chose to settle on fees. Instead, the Service doubles-down and asserts that the Tribe's, Alliance's and Society's attorneys "needed less than half the hours [billed by Guardians] to prevail" in their cases

5

(Doc. 355 at 31), and that therefore proves Guardians spent an unreasonable amount of time.

A more accurate assessment would be that while Guardians' attorneys expended *more hours* to litigate far more aspects of its case than the Tribe, Alliance, and Society – including additional time on background research, case management, record review, summary judgment, hearing prep, and appeal time – doing so was reasonable and necessary for the six unique claims it pursued and argued – both at the district court and on appeal. Guardians determined – early on – that its claims would require a significant investment of time. The stakes were high, not only for the Yellowstone grizzly bears facing a fall trophy hunting season, but also for the precedent the claims in this case could set for the ESA.

Guardians thus deemed it imperative to hire and consult with a grizzly bear expert (Dr. David Mattson) as part of its background work to ensure Guardians got the science right, and its work ultimately proved critical to securing the temporary restraining order/preliminary injunction and prevailing on the merits. So too was Guardians' time

6

carefully reviewing the approximately 350,000-page administrative record and participating in all aspects of this case.

Further, among all of the five cases, the time records reveal Guardians' attorneys did the lion's share of the work to: (1) coordinate, prepare, and file a nine-page joint case management plan for all five cases (Doc. 23), thus accounting for the additional hours of "case management" time highlighted by the Service; and (2) coordinate and compile a single joint statement of facts for summary judgment (Doc. 187) and a single joint response to the Service's statement of facts (Doc. 225). Then, on the parties' cross-motions for summary judgment, Guardians briefed six separate issues on the merits (at the district court and on appeal), and Guardians' main attorney, Mr. Bishop, appeared and argued before this Court and the Ninth Circuit. On appeal, Guardians also argued the Society's recalibration issue.

Guardians' attorneys carefully documented all of this time, and the accuracy and reasonableness of their timesheets is supported by two experienced Montana litigators. The amount of time Guardians' attorneys spent in this case is presumptively reasonable, *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008), and supported by the

7

applicable case law. *See, e.g., Defs. of Wildlife v. Hall*, No. CV-08-56-M-

DWM (D. Mont. Feb. 17, 2009) (Doc. 125 at 5) (1,183 hours reasonable

for ESA case resolved at district court following preliminary

injunction).[1]

## B.   The Service Failed to Meet its Evidentiary Burden on Rebuttal.

Guardians bears the initial burden of documenting that its

attorneys expended a reasonable amount of time and submitting

evidence to support the hours it seeks. *Gates v. Deukmejian*, 987 F.2d

1392, 1397–98 (9th Cir. 1992). To do so, Guardians submitted two

expert declarations: (1) one from L. Randall Bishop who declared that

given the length and complexity of the case, Guardians' time was

reasonable (Doc. 342-6 at 4); and (2) one from Matthew Hayhurst, who

also concluded that Guardians' time was reasonable given the length

---

[1] The Service asserts *Defs. of Wildlife* is unhelpful because Guardians seeks 500 more hours than Judge Molloy deemed reasonable in that case. (Doc. 355 at 31.) But that case was resolved in the district court after it issued a preliminary injunction. By contrast, here, after the Court issued a temporary restraining order, this case continued on to cross-motions for summary judgment, went up on appeal to the Ninth Circuit, and is now back on remand. These later stages easily make up for the difference in time.

and complexity of this case, the number of parties and claims involved, and the exceptionally large size of the administrative record. (Doc. 342-5 at 4).

Accordingly, the evidentiary burden on rebuttal then shifted to the Service to submit "evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted" by the moving party. *Gates*, 987 F.2d at 1397-98. In this respect, the Service must go beyond mere allegations or observations and "identify any unreasonable tasks or hours or provide some valid reason to reduce the time requested." *Greenpeace, Inc. v. Stewart*, No. 17-35945, 2020 WL 2465321, *5 (9th Cir. May 12, 2020) (Shaw, Commissioner) (citation omitted).

The Service completely failed to meet this burden. Indeed, it failed to submit a *single* declaration or other relevant evidence on rebuttal. Instead, it asserts that Mr. L Randall Bishop's and Mr. Hayhurst's expert opinions should be excluded because they did not review and compare the attorneys' billing records in the other, consolidated cases. (Doc. 355 at 37). But as noted, how much time the attorneys for the Tribe, Alliance, and Society spent in their respective cases is irrelevant

to how much time Guardians' attorneys reasonably spent to prevail *in this case* (Case No. 17-118). The other plaintiffs brought different cases, involving different claims, with different amounts of effort, and ultimately different results.

## C.   Guardians Avoided Unnecessary Duplication.

The Service asserts that Guardians' attorneys' time should be reduced because there was needless duplication among the consolidated cases. (Doc. 355 at 32). The opposite is true: Guardians' attorneys carefully coordinated their case with the other plaintiffs and took steps to avoid duplication. In fact, the Service previously admitted as much, noting that "[w]hile there is some commonality among the briefs, Plaintiffs coordinated prior to their filings and have dedicated each brief to addressing *largely discrete, unique arguments* contesting the Final Rule." (Doc. 195 at 3) (emphasis added).

For example, Guardians avoided duplicating arguments by explicitly incorporating by reference the other plaintiffs' arguments when appropriate. *See* (Doc. 186 at 30, 39) (incorporating Northern Cheyenne's remnant and meat-based diet arguments); (Doc. 186 at 33) (same for the Alliance's historic range argument); (Doc. 186 at 40) (same

for the Society's conservation strategy arguments). Guardians also worked to avoid duplication on reply on summary judgment, (Doc. 224 at 8 n.1), and in the Ninth Circuit. (Ninth Cir. Dkt. Entry 91 at n. 2.)

In *Ass'n of California Water Agencies v. Evans*, 386 F.3d 879 (9th Cir. 2004), the Ninth Circuit recognized that "[i]t is not unreasonable to have several plaintiffs sue for the same relief." *Id*. at 887. Nor is it per se unnecessarily duplicative or "double-billing" when several plaintiffs bring separate cases. *Id*. In arguing to reduce time due to duplication, the Service's relies on an out-of-circuit district court case, *Nat'l Rifle Ass'n v. Vill. of Oak Park*, 871 F. Supp. 2d 781 (N.D. Ill. 2012). (Doc. 355 at 40.) But that case involved two attorneys acting as local counsel for the same plaintiff, and with time records deemed "ultimately useless, given the lack of detail." *Id*. at 792. That has nothing to do with this case as the Service never challenged Guardians' attorneys' time on those grounds.

## D.   Guardians' Attorneys' Time was not Excessive.

Guardians' attorneys are required to omit non-compensable time, *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), which they all did, including Mr. Bishop, who omitted fully 210 hours he spent on this case.

(Doc. 342-1 at 33). Nonetheless, the Service asserts they billed excessive time.

The Service says one of the "biggest problems" with Guardians' time is that the attorney with the highest rate, Mr. Bishop, "performed most of the tasks." (Doc. 355 at 49). The Service is correct: In this case, Mr. Bishop did the lion's share of the work for Guardians. But having an experienced attorney perform most of the important tasks, *i.e.*, carefully reviewing the administrative record, drafting the briefs at both the district court and appellate levels (with help and support from junior attorneys) is important in this type of potentially precedent-setting case. This is especially true when the same attorney presents oral argument on behalf of the client in both the trial and appellate courts, where judges frequently ask questions related to the case history, specific evidence in the record, and the meaning of cases for or against the client's position.

Next, the Service targets roughly seven hours of Mr. Bishop's time as allegedly spent on "administrative" or "mundane" tasks that a less experienced attorney should have performed, including time on "service/filing" and time spent "printing and organizing documents."

(Doc. 355 at 49). But the 0.9 hours Mr. Bishop billed for "service/filing" was time Mr. Bishop billed to actually file the case in ECF, including his final review of the documents being filed before doing so. (Doc. 342-1 at 20). The roughly six hours challenged on "printing and organizing" was time Mr. Bishop spent printing and organizing documents from the record for his legal review (Doc. 342-1 at 23), and time printing an organizing documents when drafting his Answering Brief at the Ninth Circuit (Doc. 342-1 at 30) and when preparing his notes and binder for his oral argument at the Ninth Circuit (Doc. 342-1 at 32, 33). This is not administrative work that could (or should) be conducted be someone other than the attorney who will argue.

Finally, the Service asserts Guardians should not be compensated for its "lack of success with certain arguments." (Doc. 355 at 50). The Service mischaracterizes Guardians' case. This Court did not *reach* some of Guardians' claims, including five alternative arguments, because it deemed it unnecessary to do so. *Crow Indian Tribe*, 343 F. Supp. 2d at 1003 n.2.  The Ninth Circuit, however, has made it clear in the context of fees for reasonable time spent by an attorney that an unreached claim is not the same as an unsuccessful claim. *Ibrahim v.*

*U.S. Dep't of Homeland Security*, 912 F.3d 1147, 1173 (9th Cir. 2019).[2]

Instead, as the Supreme Court has stated: "Where a plaintiff has

obtained excellent results, his attorney should recover a fully

compensatory fee. . . Litigants in good faith may raise alternative legal

grounds for a desired outcome, and the court's rejection of *or failure to*

*reach certain grounds* is not a sufficient reason for reducing a fee. The

result is what matters." *Hensley*, 461 U.S. at 435 (emphasis added).

### E.   Guardians was Compelled to Litigate Fees.

This Court should reject the Service's request to disallow

Guardians' fees-on-fees time. (Doc. 355 at 54-55). The Service relies on

*Kinney v. Int'l Bhd. of Elec. Workers*, 939 F.2d 690 (9th Cir. 1991), but

*Kinney* rejects the very concerns the Service asserts here, *i.e.*, that

awarding fees for fee litigation will lead to abuse. *Id.* at 695. There, the

Ninth Circuit noted such concerns are "groundless" and reiterated why

it would be inappropriate "to dilute an award of fees by refusing to

compensate an attorney for time spent to establish a reasonable fee." *Id.*

---

[2] And, as the Court is aware, even time on unsuccessful claims may be
compensable if "related" to successful claims that "arose out of the same
course of conduct." *Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003).

In terms of hourly rates for litigating fees, Guardians is aware this Court previously reduced the rates for fee-on-fee time in accordance with the District's practices. But it did so before *Greenpeace*, 2020 WL 2465321 at *5, which rejected this approach. There, the Ninth Circuit Commissioner reasoned that applying different hourly rates to different aspects of a litigation is "unwieldy and time-consuming" and risks turning the fee award into a second major litigation. *Id*. at *6. This reasoning is persuasive and should be applied.

## F.     The Court Should Award Guardians its Costs and Expenses.

This Court should reject the Service's request to disallow costs, like it did in *Alliance for the Wild Rockies v. Savage*, No. CV 15-54-M-DLC, 2019 WL 3293425, *8 (D. Mont. July 22, 2019). The Ninth Circuit's direction that each party bear its own costs extends to taxable costs listed in 28 U.S.C. § 1920 that would normally be submitted to the Ninth Circuit. *See* Fed. R. App. P. 39. It does not extend costs incurred at the district court, or non-taxable costs expressly authorized by statute. *Savage*, 2019 WL 3293425, *8 (quotation omitted). This includes Guardians' expert witness fees, which are expressly provided for by the ESA, 16 U.S.C. § 1540(g)(4). The Service is incorrect that

*Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873 (2019) precludes expert witness fees here, because the ESA citizen suit provision explicitly allows them. *Alliance for the Wild Rockies v. U.S. Army Corps of Engineers*, No. 3:16-CV-1407-HZ, 2019 WL 1749518, *6 (D. Or. April 14, 2018).

## CONCLUSION

Guardians respectfully requests that this Court grant its motion for $515,740 in attorneys' fees and costs (plus $10,728 for time spent on this reply, *see* Second Bishop Dec., Exhibit A).

Respectfully submitted this 17th day of March, 2021.

/s/ Matthew Bishop
Matthew Bishop
Western Environmental Law Center
103 Reeder's Alley
Helena, MT 59601
(406) 324-8011
bishop@westernlaw.org

*Counsel for WildEarth Guardians*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this reply brief is proportionally spaced, has a typeface of 14 points or more, and contains fewer than 3,250 words. I relied on Microsoft Word to obtain the word count.


/s/ Matthew K. Bishop
Matthew K. Bishop