Timothy J. Preso
Earthjustice
313 East Main Street
Bozeman, MT 59715
(406) 586-9699 | Phone
(406) 586-9695 | Fax
tpreso@earthjustice.org

*Counsel for Plaintiffs Sierra Club, Center for Biological Diversity, and National Parks Conservation Association and Local Counsel for Plaintiff Northern Cheyenne Tribe*

Beth Baldwin
Ziontz Chestnut
2101 Fourth Avenue, Suite 1230
Seattle, WA 98121
(206) 448-1230 | Phone
(206) 448-0962 | Fax
bbaldwin@ziontzchestnut.com

*Counsel for Plaintiff Northern Cheyenne Tribe*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CROW INDIAN TRIBE, et al., | Case No. CV 17-89-M-DLC |
| Plaintiffs, | (consolidated with Case Nos. CV 17-117-M-DLC, CV 17-118-M-DLC, CV 17-119-M-DLC, and CV 17-123-M-DLC) |
| v. | |
| UNITED STATES OF AMERICA, et al., | |
| Federal Defendants, | **PLAINTIFFS NORTHERN CHEYENNE TRIBE, ET AL.'S REPLY IN SUPPORT OF UPDATED AND REVISED MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS** |
| and | |
| STATE OF WYOMING, et al., | |
| Defendant-Intervenors. | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

I.   FEDERAL DEFENDANTS' CHARGE OF UNNECESSARY
     DUPLICATION IS SPURIOUS ..................................................................2

     A.   Northern Cheyenne Reasonably and Efficiently Litigated This
          Case ...................................................................................................2

     B.   Federal Defendants' Contrary Arguments Are Meritless .....................7

II.  FEDERAL DEFENDANTS' REMAINING ARGUMENTS FAIL.............12

III. NORTHERN CHEYENNE'S FINAL REQUESTED RECOVERY ...........15

CONCLUSION ......................................................................................................15

# TABLE OF AUTHORITIES

### FEDERAL CASES

Comm'r, INS v. Jean,
    496 U.S. 154 (1990)..................................................................................................14

Greenpeace, Inc. v. Stewart
    No. 17-35945, 2020 WL 2465321 (May 12, 2020)............................................14

Hensley v. Eckerhart,
    461 U.S. 424 (1983).....................................................................................11, 12, 14

Humane Soc'y of the U.S. v. Zinke,
    865 F.3d 585 (D.C. Cir. 2017).................................................................................3, 4, 6

Moreno v. City of Sacramento,
    534 F.3d 1106 (9th Cir. 2008) .......................................................................9, 12

Rimini Street, Inc. v. Oracle USA, Inc.,
    139 S. Ct. 873 (2019)..................................................................................................15

### RULES

Fed. R. App. P. 39(a) ...................................................................................................15

Federal Defendants offer no legitimate opposition to Plaintiffs Northern Cheyenne Tribe, et al.'s (collectively, "Northern Cheyenne") request for an award of attorneys' fees and costs in case No. 17-119. Federal Defendants argue for "substantial decreases in any fee award" on grounds of alleged unnecessary duplication by Northern Cheyenne's counsel. ECF_355 at 25.[1] Federal Defendants contend: "Although there appears to have been some coordination among the plaintiff-groups, the vast majority of briefing from the plaintiff-groups was very similar." Id. 17. Yet, earlier in these proceedings, when Federal Defendants attempted to persuade this Court to expand the word limit for their summary judgment response brief, they argued just the opposite: "While there is some commonality among the [Plaintiffs' summary judgment] briefs, Plaintiffs coordinated prior to their filings and have dedicated each brief to addressing largely discrete, unique arguments contesting the Final Rule." ECF_195 at 3 (emphasis added). Federal Defendants' earlier concession—not their more recent assertion—is accurate. This Court should grant Northern Cheyenne's request for fees and costs.

---

[1] For ease of cross-referencing, Northern Cheyenne adopts Federal Defendants' citation form for ECF documents, citing the page number in the upper right corner.

1

## I.     FEDERAL DEFENDANTS' CHARGE OF UNNECESSARY DUPLICATION IS SPURIOUS

In opposing Northern Cheyenne's request for fees and costs, Federal Defendants concede that the Endangered Species Act's ("ESA") citizen-suit provision is "the operative statute" for a fee award, ECF_355 at 23 n.6; Northern Cheyenne is entitled to such an award, id. 9, 57; and the hourly rates requested by Northern Cheyenne's counsel for work on the merits are reasonable, id. 34.

Nevertheless, Federal Defendants contest Northern Cheyenne's request primarily by contending that Northern Cheyenne failed to coordinate with other plaintiffs in these consolidated proceedings and therefore engaged in "needless duplication" in briefing "very similar arguments" as those raised by other plaintiffs, leading to "excessive" hours expended by counsel. Id. 12, 25-31, 42. Federal Defendants are wrong.

### A.     Northern Cheyenne Reasonably and Efficiently Litigated This Case

Northern Cheyenne reasonably and efficiently litigated this case by coordinating with other plaintiffs to avoid duplication, with the result that Northern Cheyenne argued key points on behalf of itself and other plaintiffs, who adopted and incorporated Northern Cheyenne's briefing throughout this litigation.

Northern Cheyenne advanced three claims alleging that the U.S. Fish and Wildlife Service ("FWS") violated the ESA and the Administrative Procedure Act:

2

(1) FWS failed to rationally explain why Greater Yellowstone grizzly bears are not threatened by escalating mortalities associated with recent consumption of more meat following loss of their traditional whitebark pine food source, ECF_1, ¶¶ 71-77 (complaint in No. 17-119); (2) FWS failed to consider the continuing ESA listing status of the remnant of the lower-48 grizzly bear listing left behind by the Greater Yellowstone delisting, see Humane Soc'y of the U.S. v. Zinke, 865 F.3d 585 (D.C. Cir. 2017); ECF_1, ¶¶ 78-81; and (3) FWS failed to allow public comment on the final Grizzly Bear Conservation Strategy despite significant last-minute changes to that document, ECF_1, ¶¶ 82-85.

    Northern Cheyenne's opening summary judgment brief addressed those issues. See ECF_190 at 9-34. Consistent with the consolidated plaintiffs' commitment to avoid duplication, see ECF_176 (joint scheduling proposal), other plaintiffs referenced and incorporated Northern Cheyenne's arguments on those issues. Plaintiffs Aland, WildEarth Guardians, Alliance for the Wild Rockies, and Humane Society of the United States adopted and incorporated Northern Cheyenne's argument on the remnant/Humane Society issue. ECF_183 at 32 (Aland); ECF_186 at 30 (WildEarth Guardians); ECF_192 at 10 (Alliance for the Wild Rockies); ECF_194 at 11 (Humane Society). They also adopted Northern Cheyenne's argument concerning grizzlies' shift to a more meat-based diet, either specifically or by generally adopting other plaintiffs' arguments concerning threats

to the species.  See ECF_183 at 32 (Aland); ECF_186 at 39 (WildEarth Guardians); ECF_192 at 10-11 (Alliance for the Wild Rockies); ECF_194 at 11 (Humane Society).  Alliance for the Wild Rockies adopted and incorporated Northern Cheyenne's public-comment argument.  See ECF_192 at 27-28.  Plaintiffs Crow Indian Tribe, et al. generally adopted all plaintiffs' arguments.  ECF_188 at 2.

   As a result of adopting and incorporating Northern Cheyenne's arguments, the consolidated plaintiffs did not independently brief the claims argued by Northern Cheyenne.  The sole exception was that Alliance for the Wild Rockies advanced a three-page argument concerning the remnant/Humane Society issue, in addition to adopting Northern Cheyenne's argument on that issue.  See ECF_192 at 20-23.  However, this was no substitute for Northern Cheyenne's 12-page treatment of this issue, which addressed numerous points not discussed by Alliance for the Wild Rockies, including FWS's post-hoc maneuvering to moot or defeat this claim, which became a centerpiece of the agency's defense.  See ECF_190 at 18-30.[2]

---

[2] Federal Defendants wrongly assert that WildEarth Guardians also argued the remnant/Humane Society issue.  ECF_355 at 17 (citing ECF_186 at 23-29).  The cited pages from the WildEarth Guardians brief address different challenges to FWS's distinct-population-segment determination and did not argue the remnant/Humane Society issue.

4

For its part, Northern Cheyenne did not raise the claims briefed by the other plaintiffs and therefore did not adopt and incorporate other plaintiffs' arguments. However, in the interest of efficiency, Northern Cheyenne referenced and incorporated two specific background discussions from the Humane Society's brief. See ECF_190 at 8, 33.

It was in this context that Federal Defendants filed their request to expand the word count for their summary judgment opposition brief, in which they asserted a need for more words because "Plaintiffs coordinated prior to their filings and have dedicated each brief to addressing largely discrete, unique arguments contesting the Final Rule." ECF_195 at 3.

The remainder of summary judgment briefing proceeded similarly, with Northern Cheyenne briefing its three claims, see ECF_231, and other plaintiffs either adopting and incorporating Northern Cheyenne's arguments on those claims specifically or by generally adopting other plaintiffs' arguments, see ECF_224 at 8 n.1 (WildEarth Guardians); ECF_226 at 7 n.1 (Aland); ECF_230 at 7 (Alliance for the Wild Rockies), or else arguing their own separate claims without adopting Northern Cheyenne's contentions, see ECF_227 (Humane Society). No plaintiff presented independent response/reply briefing on the issues briefed by Northern Cheyenne.

The consolidated plaintiffs also filed a joint statement of undisputed facts in support of summary judgment, see ECF_187, and a joint response to Federal Defendants' statement of undisputed facts, see ECF_225, thereby further reducing duplication.

At the appellate stage, Northern Cheyenne argued the remnant/<u>Humane Society</u> issue and also argued its claim concerning grizzlies' shift to a meat-based diet as an alternative ground for affirmance.  See <u>Crow Indian Tribe v. United States</u>, Appeal Nos. 18-36030 <u>et al.</u>, ECF_92 at 28-73.  Northern Cheyenne did not adopt other plaintiffs' arguments on the merits but did adopt WildEarth Guardians' jurisdictional argument.  See <u>id.</u>, ECF_92 at 11.  Other plaintiffs adopted and incorporated Northern Cheyenne's argument on the remnant/<u>Humane Society</u> issue and did not brief it themselves.  See <u>id.</u>, ECF_91 at 34, 40 (WildEarth Guardians); ECF_93 at 13 (Alliance for the Wild Rockies); ECF_94 at 9 (Humane Society); ECF_96 at 19 (Crow Indian Tribe); ECF_101-1 at 17-18, 52 (Aland).  Northern Cheyenne also maximized efficiency on appeal by submitting joint supplemental excerpts of record with Humane Society and WildEarth Guardians.

In addition to briefing arguments adopted and incorporated by other plaintiffs, Northern Cheyenne prepared and filed numerous joint submissions on behalf of itself and other plaintiffs.  Most notable was the motion and briefing in support of plaintiffs' successful request for a temporary restraining order to prevent

grizzly hunting until this Court could resolve the merits, see ECF_252, 253, 256, 257, 265, but Northern Cheyenne also took the lead in preparing other joint filings before this Court, see ECF_196 (response to Federal Defendants' motion to expand word limit); ECF_278 (motion to extend deadline for fee claims); ECF_329 (status report regarding fee motions), ECF_349 (response to federal motion for expanded fee opposition brief), and the Ninth Circuit, Crow Indian Tribe v. United States, Appeal Nos. 18-36030 et al., ECF_82-1 (motion to extend briefing deadline).

### B. Federal Defendants' Contrary Arguments Are Meritless

Against the backdrop of this accurate recounting of the proceedings—which this Court already knows well from adjudicating this case—Federal Defendants' charge that Northern Cheyenne's litigation was "unnecessarily duplicative," ECF_355 at 25, fails.

Federal Defendants argue that Northern Cheyenne, Humane Society, and Alliance for the Wild Rockies all faulted Federal Defendants' reliance on the Conservation Strategy "for one reason or another," id. 17, but no other party briefed Northern Cheyenne's arguments that FWS irrationally overlooked loopholes in the Conservation Strategy that allowed unlimited killing of grizzly bears involved in conflicts with humans, ECF_190 at 14-18, and unlawfully failed to allow necessary comment on last-minute changes to the Strategy, id. 30-34. Humane Society argued the Strategy was unenforceable, lacked necessary funding,

7

allowed excessive mortality of male bears, and lacked an essential "recalibration" provision.  See ECF_194 at 12-15, 18-25, 29-33.  Alliance for the Wild Rockies did not brief a challenge to the Conservation Strategy, but adopted and incorporated Northern Cheyenne's public-comment argument concerning the Strategy.  See ECF_192 at 27-28.  Thus, the Conservation Strategy arguments offered by plaintiffs were either divergent (as between Northern Cheyenne and Humane Society) or identical and thus handled through adoption and incorporation (as between Northern Cheyenne and Alliance for the Wild Rockies).

      Federal Defendants also accuse Northern Cheyenne and WildEarth Guardians of "duplicating the same argument" regarding future threats to the grizzly population, ECF_355 at 18, but Northern Cheyenne argued that FWS disregarded the mortality threat arising from grizzlies' shift to a meat-based diet, ECF_190 at 9-18, whereas WildEarth Guardians argued that FWS wrongly deemed an isolated population of 600-700 bears recovered under the ESA, ECF_186 at 34-39.  Similarly, Federal Defendants contend that Northern Cheyenne and Aland "both argued that FWS did not adequately address public comments," ECF_355 at 18, but Northern Cheyenne argued that FWS failed to allow comment on last-minute changes to the Conservation Strategy, ECF_190 at 30-34, while Aland argued that FWS unlawfully disregarded public sentiment against delisting, ECF_183 at 12-14, 24-29.  This was not duplication.

Apparently, under Federal Defendants' theory, Northern Cheyenne could have reasonably litigated this case only by abandoning its own theories on the aforementioned issues and adopting the entirely distinct theories advanced by other plaintiffs. This is not the law. "The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008). Northern Cheyenne's counsel would not be prohibited from billing a private client to advance that client's own theories rather than divergent theories of a different plaintiff.

Federal Defendants also attempt to parse out the hours that Northern Cheyenne's attorneys devoted to specific tasks and claim they were excessive. ECF_355 at 26-31 & Exhibit 1. They criticize Northern Cheyenne for allegedly devoting 138.8 hours to a so-called "procedural response brief" addressing Federal Defendants' December 21, 2017 motion to stay this litigation (ECF_61). ECF_355 at 28. However, Federal Defendants' Exhibit 1 reveals that they inflated this total by lumping together time spent opposing the motion to stay with time spent opposing Federal Defendants' separate January 9, 2018 motion to stay briefing on Northern Cheyenne's January 8, 2018 motion for partial summary judgment (ECF_75, 78). See, e.g., ECF_355 Ex. 1 (Preso time entries for Jan. 10-15, 2018; Purtle time entries for Jan. 10, 12-16, 2018). Even responding to Federal

9

Defendants' motion to stay alone required more than a simple "procedural response brief," as Northern Cheyenne's counsel also had to prepare for and argue at the March 13, 2018 hearing on the stay motion. See ECF_130. Further, Federal Defendants ignore that their stay motion presented a critical juncture in this case, as they sought to freeze this litigation while they developed a new rationale for their challenged decision that this Court later described as, "[a]rguably, … an impermissible post-hoc rationalization," ECF_266 at 21 n.5, and while the states of Wyoming and Idaho conducted grizzly bear hunting that threatened irreparable harm to plaintiffs' interests, see ECF_254 at 3 (TRO). Accordingly, Northern Cheyenne appropriately prioritized opposing the stay.

Federal Defendants' attacks on Northern Cheyenne's time devoted to summary judgment and appellate proceedings, ECF_355 at 28-30, similarly fail. Federal Defendants' comparison with hours spent by other plaintiffs' counsel overlooks the fundamental point that plaintiffs in the consolidated cases advanced distinct arguments necessitating different expenditures of attorney time and, as discussed, plaintiffs almost entirely avoided duplication. Further, the attorney hours in question included not only those devoted to "summary judgment briefs and related filings" and "appellate briefing," as Federal Defendants allege, id. 28-29, but also hours spent preparing for and arguing at the 2018 summary-judgment hearing and 2020 appellate argument, during both of which Northern Cheyenne's

counsel took a lead role, including at times presenting argument on behalf of other plaintiffs.

Contrary to Federal Defendants' argument, Northern Cheyenne's counsel devoted a reasonable number of hours to pursuing their specific claims, as attested by two eminent Montana lawyers, James H. Goetz and Roger Sullivan. See ECF No. 344-2, ¶ 11 (Goetz declaration); ECF No. 344-3, ¶ 14 (Sullivan declaration). Further, Northern Cheyenne's counsel already exercised billing judgment to eliminate 687.4 attorney hours from their fee claim for reasons including redundancy. ECF No. 345, ¶ 5 (Preso declaration). And, perhaps most importantly, Northern Cheyenne obtained an excellent result, winning a temporary restraining order preventing grizzly bear hunting and, ultimately, a judgment vacating the challenged delisting rule. See Hensley v. Eckerhart, 461 U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."). Northern Cheyenne's counsel won this victory in a high-profile case in which Northern Cheyenne advanced the lead issue addressed by both this Court and the Ninth Circuit and sometimes drew disproportionate opposition from adverse parties. See, e.g., Tr. of Summ. J. Hr'g at 136-37 (Aug. 30, 2018) (Court stating to Northern Cheyenne counsel: "[Y]ou have been repeatedly referenced [in opposing arguments]. I'm assuming and I'm hoping you're going to do the rebuttal.") (attached as Exhibit 1). In these

circumstances, Federal Defendants' attempt to parse counsel's time based on inapposite comparisons to different cases is unavailing. "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." Moreno, 534 F.3d at 1112.[3]

## II. FEDERAL DEFENDANTS' REMAINING ARGUMENTS FAIL

None of Federal Defendants' remaining arguments undermine Northern Cheyenne's claim for fees and costs.

First, Federal Defendants argue the Court should disregard Northern Cheyenne's expert declarations because the experts do not "state that they reviewed the contemporaneous billing records of the attorneys for the other plaintiff-groups." ECF_355 at 36. But this argument assumes the relevancy of the other attorneys' billing records based on Federal Defendants' fundamental premise that plaintiffs redundantly briefed the same issues. As discussed at Point I.A, supra, that premise is false; the evidence that Federal Defendants claim the experts overlooked was therefore irrelevant.

---

[3] Federal Defendants' observation that this Court and the Ninth Circuit did not reach all of Northern Cheyenne's claims, ECF_355 at 28-29, does not justify a reduction. See Hensley, 461 U.S. at 435 (holding that, where plaintiff obtains excellent result, "the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee").

Second, Federal Defendants attack the alleged "serial filing of complaints" in these proceedings and speculate that plaintiffs were motivated by "public relations or fundraising efforts." ECF_355 at 41, 46 n.13. But the fact is that Northern Cheyenne filed its own complaint because it did not join in all the claims raised by other plaintiffs. Accordingly, there was no "needless duplication," id. 42, especially because all plaintiffs coordinated to avoid duplication on the points where their complaints overlapped. See Point I.A, supra.

Third, Federal Defendants charge that Northern Cheyenne excessively used nine attorneys and four law clerks. ECF_355 at 52-53. However, Federal Defendants ignore that four law clerks and one attorney engaged in short-term, discrete tasks such as citation checks or research assignments. Most work was performed by lead attorney Timothy Preso and associate attorney Joshua Purtle from Earthjustice. Earthjustice attorneys Jenny Harbine and Katherine O'Brien reviewed key briefs and mooted key arguments, with Ms. O'Brien also taking the lead in presenting oral argument on the stay issue when Mr. Preso had a conflict. Earthjustice counsel coordinated efficiently with counsel for the Northern Cheyenne Tribe, who ensured representation of the Tribe's specific sovereign interests in the plaintiff coalition. Most work for the Tribe was performed by Joshua Osborne-Klein and Beth Baldwin of the Ziontz Chestnut firm, with Baldwin replacing Osborne-Klein after he left the firm. Thus, Federal Defendants'

charge of "inherent duplication," id. 53, is unfounded. Further, while Federal Defendants contend that counsel inappropriately spent 13.7 hours on conferencing, id. 54, this amounts to 4.6 hours per year over the three years of this litigation—hardly "excessive conferencing," id. 53.[4]

Fourth, Federal Defendants ask the Court to bar recovery for "fees on fees." Id. 54-56. However, fee-shifting statutes "favor[] treating a case as an inclusive whole, rather than as atomized line-items. Comm'r, INS v. Jean, 496 U.S. 154, 161-62 (1990); see also id. at 163 n.10 (establishing that Hensley applies equally to "fees for fee" litigation). Thus, Northern Cheyenne's overall entitlement extends to this fee motion. As for Federal Defendants' objection to Northern Cheyenne's hourly rate for fee litigation, ECF_355 at 55, Jean's inclusive approach equally disfavors applying different hourly rates for "fee-on-fee" proceedings, instead simply requiring reasonable attorney hours, Greenpeace, Inc. v. Stewart, No. 17-35945, 2020 WL 2465321, at *5-6 (May 12, 2020) (appellate commissioner ruling). Here, Northern Cheyenne efficiently pursued fee recovery.

---

[4] As for Federal Defendants' charge that "senior attorneys" inappropriately performed "relatively mundane tasks," ECF_355 at 54, the tasks in question involved reviewing, finalizing, and supervising filing of Northern Cheyenne's briefs on the merits. It was not unreasonable for lead counsel to ensure quality control on such central filings in this case.

Fifth, and finally, Federal Defendants argue the Ninth Circuit barred any award of costs to Northern Cheyenne. ECF_355 at 56. However, the Ninth Circuit's statement should be construed as applying only to appellate costs, given that the Federal Rules of Appellate Procedure presumptively assign such costs among the parties "unless … the court orders otherwise." Fed. R. App. P. 39(a). Accordingly, the Ninth Circuit did not bar Northern Cheyenne's requested cost recovery for District-Court proceedings, which conforms with <u>Rimini Street, Inc. v. Oracle USA, Inc.</u>, 139 S. Ct. 873, 877 (2019). <u>See</u> ECF_355 at 56 n.17.

### III. NORTHERN CHEYENNE'S FINAL REQUESTED RECOVERY

Northern Cheyenne's opening brief advised that counsel would supply a final total of attorney time devoted to this fee recovery with this reply brief. Northern Cheyenne now advises that its attorneys have devoted 89.2 hours to pursuing this fee claim, valued at $32,525.00. <u>See</u> Second Declaration of Timothy J. Preso & Attachment (attached as Exhibit 2). When combined with Northern Cheyenne's request for attorneys' fees for the merits-related litigation totaling $354,606.00 and costs in the amount of $1,428.50, Northern Cheyenne's total requested fee recovery is $388,559.50.

### CONCLUSION

For the foregoing reasons, Northern Cheyenne respectfully requests that this Court award them a recovery for attorneys' fees and costs of $388,559.50.

15

Respectfully submitted this 18th day of March, 2021.

/s/ Timothy J. Preso
Timothy J. Preso
Earthjustice
313 East Main Street
Bozeman, MT 59715
(406) 586-9699
tpreso@earthjustice.org

*Counsel for Plaintiffs Sierra Club, Center for Biological Diversity, and National Parks Conservation Association and Local Counsel for Plaintiff Northern Cheyenne Tribe*

Beth Baldwin
Ziontz Chestnut
2101 Fourth Avenue, Suite 1230
Seattle, WA 98121
(206) 448-1230 | Phone
(206) 448-0962 | Fax
bbaldwin@ziontzchestnut.com

*Counsel for Plaintiff Northern Cheyenne Tribe*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), I hereby certify that the foregoing brief contains 3,209 words, as determined by the word count function of Microsoft Word.

/s/ Timothy J. Preso
Timothy J. Preso

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was today served via the Court's CM/ECF system on all counsel of record.

/s/ Timothy J. Preso
Timothy J. Preso